**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 6 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

TERRI RECTOR and DAMIAN
SPENCER, individually and on behalf
of all others similarly situated,

       Plaintiffs-Appellants,

v.

CITY AND COUNTY OF DENVER, a
municipal corporation,

       Defendant-Appellee.

No. 02-1434

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 01-PC-494 (BNB))**

---

Jesse H. Choper (Robert B. Carey and Leif Garrison of The Carey Law Firm,
Colorado Springs, Colorado, on the briefs), for Plaintiffs-Appellants.

Debra Asimus Overn, Assistant City Attorney (J. Wallace Wortham, Jr., City
Attorney; Geoffrey S. Wasson and Christopher M.A. Lujan, Assistant City
Attorneys, with her on the brief), City and County of Denver, Denver, Colorado,
for Defendant-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS** and **McCONNELL**,
Circuit Judges.

---

**McCONNELL**, Circuit Judge.

In this class action lawsuit against the City and County of Denver ("City" or "Denver"), Plaintiffs-Appellants allege that Denver's parking enforcement regime violates their rights to due process. Their primary claim is that the parking tickets erroneously lead ticket recipients to believe that they will be assessed a late fee if they do not pay the ticket within the allotted twenty-day period, even if they challenge the ticket in a timely fashion. According to Plaintiffs, this misinformation deprives recipients of due process because it discourages ticket recipients from contesting their tickets for fear of incurring a late fee. Plaintiffs further raise several related due process and equal protection claims and challenge the district court's class certification order.

The issue of standing looms large in our disposition of this case. As discussed below, we find that the named plaintiffs Terri Rector and Damian Spencer lack standing to represent the absent class members for the most significant claims presented. We have thus remanded these claims for decertification and dismissal. With respect to the claims for which Plaintiffs are representative of the class, we affirm the district court and dismiss these claims as to both the named representatives and the absent class members.

## I. Factual Background

### A. Denver's Parking Regime

The material facts concerning the procedures used by Denver for enforcing

its parking regulations are not in dispute.

In authorizing the collection of parking fines, Denver's Municipal Code states that "[t]he presiding county judge and the county judges who hear traffic cases shall specify by suitable schedules the fines for violations of Article VII [pertaining to parking violations]." Denver, Colo., Municipal Code § 54-795 (hereafter "Municipal Code"). The City issues over 600,000 parking citations each year pursuant to this section of the Municipal Code.

Upon receipt of a ticket, the putative violator has twenty days to pay the ticket. If the fine is paid within twenty days, the matter is concluded. If the recipient wishes to contest the ticket, he is instructed to call the phone number printed on the ticket. Upon calling the listed number, the ticket recipient is advised either to submit specific documentation for an investigation or to appear in person at the office of the parking referee in Denver. Recipients who appear at the parking referee's office are advised of the procedures relevant to the hearing and are then given an opportunity to seek a fine reduction. If the citation cannot be resolved through fine reduction, the matter is set for a hearing before a Denver County Court judge or magistrate. As long as the ticket recipient either pays the fine or takes one of the above steps to challenge the ticket within the twenty days, no late fee is imposed.

If the recipient does not respond to the ticket within twenty days, the City

sends out a series of notices to the registered owner of the vehicle. These notices advise that a late fee has been added to the original fine for failure to respond in a timely manner, and instruct the alleged violator to pay the fine. The notices also list a phone number to dispute the citation, and advise that failure to respond may result in seizure of the vehicle. Third and fourth notices sent by the City similarly inform ticket recipients that their cars may be seized for nonpayment of the parking fine and the associated late fee. If the twenty-day period lapses before the recipient has the matter set for a hearing, the magistrate has discretion to impose all or part of the late fee. However, if the recipient succeeds on the merits of his case, no late fee is imposed.

The language printed on the ticket in relevant part reads:[1]

> For information or to dispute this citation contact (303) 296-2595, or send written inquiries to:
> Denver Parking Violations Bureau
> P.O. Box 46500
> Denver, CO 80201-6500

---

[1] The City uses two formats for its tickets, a hand-held computer format and a manual format. In text we reproduce the text of the hand-held format. Although the reverse side of each ticket is identical, the front sides contain minor variations. The relevant portion of the manual ticket's front reads:

> MAIL CHECK OR MONEY ORDER PAYABLE TO DENVER PARKING VIOLATIONS BUREAU IN THIS ENVELOPE. *DO NOT SEND CASH.* PAYMENT MAY ALSO BE MADE AT 110 16TH ST. SUITE 780, DENVER, CO 80202, MON-FRI 8AM-5PM. IF PAYMENT IS NOT RECEIVED WITHIN 20 CALENDAR DAYS, THE FINE WILL BE INCREASED. FOR INFORMATION, TO PAY BY PHONE (VISA OR MASTERCARD), OR TO DISPUTE THIS CITATION, CALL (303) 296-2595.

SEE REVERSE SIDE FOR
IMPORTANT INSTRUCTIONS

The reverse side states:

TO VIOLATOR

Within 20 days you must respond to the charge(s) of violating the revised Municipal Code of the City and County of Denver, Colorado, and/or Airport Rules and Regulations, which violation(s) occurred in the City and County of Denver.

If payment is not received within 20 calendar days, the fine is increased to the following:

| Viol. Code | $ Due After 20 Calendar Days |
|---|---|
| 23 | $50 (No Penalty) |
| All Others | Fine Amt. is Doubled |

FAILURE TO PAY PARKING FINES
MAY SUBJECT MOTOR VEHICLE TO
SEIZURE

Plaintiffs' principal claim is that because the ticket's statement that the fine will be doubled if it is not paid within twenty days does not contain an exception for cases when the ticket is challenged through the appropriate procedures, the City illegitimately pressures recipients to pay the fine rather than assert their right to challenge the substantive violation alleged in the ticket.

B.    Named Plaintiffs

There are only two named plaintiffs serving as representatives of the class. The first, Terri Rector, is married to a partner in the law firm representing the plaintiff class. On June 10, 2000, shortly after 5:00 p.m., Mrs. Rector parked her car at a metered spot in downtown Denver. According to her sworn statement, Mrs. Rector did not place any coins in the meter, check to see whether the meter

5

was in force, or determine whether any time remained on the meter. At approximately 6:00 p.m., Mrs. Rector was issued a parking ticket, which she paid on June 12, 2000, two days after issuance. Mrs. Rector neither contested the citation nor called the number printed on the ticket to acquire further information. She does not assert any legal basis for contesting the citation.

The facts surrounding Plaintiff Damian Spencer's ticket are more uncertain. Mr. Spencer, a personal friend of Plaintiffs' counsel, offered two different and contradictory accounts in his sworn affidavit and sworn deposition regarding the circumstances under which he received a parking ticket. Each of these accounts is inconsistent with documentary evidence offered by the City, which shows no record that the City issued a ticket either to Mr. Spencer or to his automobile during the time-frame of this action.[2] According to Mr. Spencer's deposition, in March of 2000, he parked his 1991 Saab with the license plate "BLAQICE" at a metered spot near the Colorado Convention Center, where he was going to attend a trade show. Mr. Spencer admits that he did not place enough money in the meter to cover the amount of time that he was parked. Upon exiting the Convention Center, Mr. Spencer saw the ticket on his windshield and placed it in

_____

[2] At a hearing on November 7, 2001, Plaintiffs advised the district court that their claims in this action are based solely on parking citations received by each plaintiff during the year 2000. Thus, although the record indicates that Plaintiff Spencer received several tickets prior to January 1, 2000, those tickets are not relevant to the present action.

his glove compartment. He did not examine the ticket until about a month later, after the twenty days had expired. Subsequently, Mr. Spencer mailed a personal check for the amount of the ticket and the late fee. He does not have a copy of the cancelled check and has not asked his bank for a copy.

Mr. Spencer's affidavit contains a different account. In this version of the events, Mr. Spencer was parked at 15th Street and Larimer and went shopping at the 16th Street Mall. As with the deposition story, he found the ticket on his windshield but did nothing about it until after the twenty-day period for timely payment had expired, at which time he paid both the fine and the late fee. In this account he paid by means of a cashier's check from the Pueblo Bank and Trust Company.

Mr. Spencer provides no documentation to support either account, and the City questions whether a ticket was actually issued. The City's parking authority maintains a database tracking the issuance of parking tickets. According to evidence submitted by the City, several computerized searches performed by the Program Administrator for the Parking Management Section of the City's Transportation Division failed to produce any record of the ticket allegedly received by Mr. Spencer.[3]

---

[3] In a post-argument submission to this Court, Plaintiffs direct our attention to footnote 2 of Defendants' Memorandum Brief in Support of Motion for

(continued...)

Because this case is on summary judgment there is no occasion to resolve these conflicting accounts. Wherever the ticketing took place, if it did take place, and however the ticket may have been paid, Mr. Spencer admits that he neither contested the citation nor called the number printed on the ticket to contest the violation. Mr. Spencer does not assert that he has any legal basis for contesting the citation, and provides no evidence that the wording of the ticket bore any causal relationship to his decision to pay, rather than challenge, the ticket.

C.      Procedural History

On March 20, 2001, Plaintiffs filed a class action complaint against the City. In their claims brought pursuant to 42 U.S.C. § 1983, Plaintiffs asserted

---

[3](...continued)

Summary Judgment at page 729 of the Appendix. The footnote states in full:

> The City and County of Denver has a computer database that tracks the dates that parking tickets were issued and whether such tickets have been paid. The Parking Management Division's computer used Mr. Spencer's name as a search query and determined that parking tickets were issued to or paid by Mr. Spencer during the relevant time period of this case.

Apparently, Plaintiffs ask the Court to construe this statement as Defendant's admission that Mr. Spencer received a parking ticket during the period relevant to this action. We refuse this invitation. First, Kathren Hearten, the Parking Management Administrator who conducted the computerized queries, testified that no citations were issued to either Mr. Spencer or his car during the relevant time period. Secondly, in filings to this Court the City repeats the assertion that its employees found no record of any tickets issued to Mr. Spencer. Therefore, we do not take footnote 2 of Defendants' filing as an admission that Mr. Spencer received a ticket and simply assume that the word "no" was accidentally omitted from the final sentence.

that: (i) their substantive and procedural due process rights are violated because the City established the late fee, fostered a situation in which varying standards are used in imposing the late fee, and established a citation format that misrepresents the putative violator's rights, (ii) their First Amendment rights are infringed because the 100% late fee discourages alleged violators from proceeding to a hearing, (iii) the Equal Protection Clause is violated because incompatible standards are used in the administration of the parking system, (iv) the imposition of a late fee, unauthorized under Colorado law, constitutes a taking under the Fifth Amendment, and (v) the threatened seizure of vehicles on account of outstanding tickets is an unreasonable seizure under the Fourth Amendment. Plaintiffs also sought declaratory relief on the basis of these claims under 28 U.S.C. § 2201, and asserted several claims under the Colorado Constitution and state common law.

Pursuant to 28 U.S.C. § 636(c), the parties consented to try this case before a United States magistrate judge. The magistrate judge (hereafter we refer to the magistrate judge's rulings as those of the district court) entered three separate orders. The first addressed the City's motion to dismiss for failure to state a claim. The second granted Plaintiffs' motion for class certification. The final order granted the City's motion for summary judgment on all outstanding claims.

The district court's Memorandum Opinion and Order of December 7, 2001

9

(the "First Order") addressed Defendants' motion to dismiss. At the outset, the court considered, *sua sponte,* whether Plaintiffs had standing to pursue the asserted claims. The court ruled that Plaintiffs had no standing to pursue claims for declaratory relief against the City, but allowed the compensatory claims to go forward. The district court also dismissed Plaintiffs' substantive due process claims but denied Defendant's motion with respect to the procedural due process claims. The court further dismissed the claims brought under the Colorado Consumer Protection Act, and dismissed the common law claims without prejudice. In closing, the court noted that it did not address claims under the First, Fourth, Fifth, and Fourteenth Amendments.

Thereafter, Plaintiffs Rector and Spencer moved the court to certify as a class all persons who were deprived of due process on account of the City's parking regulation scheme, and to be named class representatives. After briefing and a hearing, the court granted Plaintiffs' motion for class certification, creating two subclasses. The first, represented by Plaintiff Spencer, is composed of any person who received "a parking violation citation . . . and who w[as] deprived of procedural due process in the payment of the scheduled fine plus the assessed penalty of equal amount." App. 657. The second sub-class, represented by Plaintiff Rector, is comprised of anyone who received "a parking violation citation . . . and who w[as] deprived of procedural due process in the payment of

the scheduled fine to the City and County of Denver within 20 days of the date of the citation." *Id.*

In its final order the district court granted the City's summary judgment motion as to all claims pending against the City. As interpreted by the district court, Plaintiffs' principal due process claim was:

> [T]hat the parking citation forms and follow up notices fail to comport with the requirements of procedural due process as a matter of law because the forms and notices do not adequately apprise alleged violators of the "pendency" of an action, or that they have the right to contest the citation at a hearing within the twenty day period without incurring late fee penalties, or that they can challenge the imposition of the late fee after the twenty day period expires. Plaintiffs also argue that the citations are misleading because they falsely advise recipients that Denver has authority to impose a late fee penalty if no response to the citation is received within twenty days.

Op. 6-7, App. 883-84. The court analyzed these due process claims under the framework set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* held that in determining what process is due, courts must balance: (i) the private interests that will be affected by the official action, (ii) the risk of erroneous deprivation, and (iii) the government's interest including the fiscal and administrative costs of additional process. *Id.* Applying these factors, the district court first found the private interests in so small a fine minimal. Under the second factor, the district court noted that two courts of appeal have held that parking citations and follow up notices "which clearly advised recipients of their

11

right to contest the citation in a court hearing or to admit responsibility and pay the fine, and which provided a telephone number to call to receive further information, satisfied procedural due process." Op. 9, App. 886 (citing *Horn v. City of Chicago*, 860 F.2d 700 (7th Cir. 1988); *Herrada v. City of Detroit*, 275 F.3d 553 (6th Cir. 2001)). The district court concluded that because recipients of Denver's tickets were provided with a phone number to call and dispute the citation, the risk of erroneous deprivation was minimal. Because the first two factors favored the City, the court dismissed the due process claims without passing on the final *Mathews* factor.

D. The Current Appeal

Plaintiffs now appeal the district court's various orders. As we interpret their filings, Plaintiffs contend that procedural due process was violated by the City because: (i) the late fee is imposed in violation of the Municipal Code, (ii) the twenty-day period has no basis in law, (iii) the citation misleads recipients into thinking that they will be subject to the late fee even if they contest the ticket, (iv) the ticket provides no information regarding how to contest the late fee itself, (v) the subsequent notices sent by the City misstate the interest it maintains in delinquent citations, and (vi) these subsequent notices fail to meet adequate notice standards.

Additionally, Plaintiffs assert that the district court erroneously applied the

12

*Mathews* factors and that dismissal of their substantive due process, equal protection, and associated claims for declaratory relief was improper. Finally, Plaintiffs assert that the district court abused its discretion in certifying the class as a Rule 23(b)(2) class under the Federal Rules of Civil Procedure rather than a Rule 23(b)(3) class.

## II.  Claims Dismissed For Want of Standing

In its First Order, the district court raised *sua sponte* the question of whether Plaintiffs had standing to pursue claims for declaratory relief. These claims were subsequently dismissed for lack of standing. Neither party has addressed standing on this appeal.

Standing, however, raises jurisdictional questions and we are required to consider "the issue *sua sponte* to ensure that there is an Article III case or controversy" before us. *See People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). Standing has both constitutional and prudential dimensions. *Bd. of County Comm'rs v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002) (citing *Sac & Fox Nation v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000)).

> To satisfy constitutional standing requirements, a plaintiff must demonstrate the presence of three elements: (1) injury in fact – meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct – meaning that

13

the injury can fairly be traced to the action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision – meaning that the prospect of obtaining relief from . . . a favorable ruling is not too speculative.

*Geringer,* 297 F.3d at 1111 (internal citations and quotation marks omitted).

Additionally, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

A.    Principal Due Process Claim

We begin by addressing whether the named representatives, Mrs. Rector and Mr. Spencer, have standing to pursue their central claim. Plaintiffs argue that due process is violated because the parking tickets erroneously lead recipients to believe that the late fee is imposed whenever the ticket is paid outside the twenty-day window, even if the ticket is formally contested on a timely basis. In actuality, as long as the recipient appears before the parking referee within twenty days, the late fee is not imposed. Plaintiffs complain that the ticket's categorical language pressures recipients to pay rather than challenge the ticket. They claim that this misapprehension constitutes a due process violation because it restricts a putative violator's opportunity to be heard and to present objections.

At the very least, parties bringing a lawsuit must have suffered injury that is fairly traceable to the violation for which they seek redress. In the context of misleading parking tickets, this requires the putative violator to have: (i) received

14

a parking ticket, (ii) been misled about the late fee, (iii) chosen not to contest the ticket for fear that the late fee would be assessed, and (iv) paid the ticket. *Cf. Herrada,* 275 F.3d at 558 (parking ticket recipient who elected to pay the fine rather than request a hearing has no standing to argue that hearings are not properly held).

Each of these elements is necessary to establish standing. If no ticket was issued, no injury can result from its misleading instructions. If the plaintiff was not misled, he could suffer no damage. And unless the plaintiff's decision not to contest the ticket is attributable to the misleading instructions, there is no connection between the alleged constitutional violation and the injury. It would seem to follow that the third requirement – a causal connection between the alleged due process violation and the recipient's failure to appeal – cannot be satisfied unless the recipient asserts that he has or had some basis for contesting the ticket.

The Supreme Court has held that standing considerations are "an indispensable part of the plaintiff's case," and that "each element [required for standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, "[w]hen the procedural posture of the case is a . . . motion for summary judgment

and plaintiffs' standing is at issue . . . a plaintiff must establish that there exists no genuine issue of material fact as to justiciability and mere allegations of injury . . . are insufficient." *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (2002) (internal quotations marks omitted) (citing *Dep't of Commerce v. United States House of Representatives*, 525 U.S. 316, 329 (1999)).

Courts must be cautious in applying Article III standing requirements in procedural due process cases. When asserting procedural rights, Article III standing does not require plaintiffs to demonstrate that they would obtain concrete relief from the desired process. *Lujan*, 504 U.S. at 573 n.7; *see also Catron City Bd. of Comm'rs v. United States Fish & Wildlife Serv.*, 75 F.3d 1429, 1433 (10th Cir. 1996) (county had standing under NEPA to sustain action for failure to prepare environmental impact statement even though "the Secretary [of Interior] may ultimately make the same decision and designate critical habitat within the same geographical parameters."). Parties may suffer injury in fact from defective procedures even if, at the end of the day, they would not have prevailed on the merits. The Court has observed that "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (citations omitted). In cases where the procedural due process rights of a person have been violated but the outcome was unaffected because the claim was not

16

meritorious, the Court has held that plaintiffs are entitled to nominal damages. *Id.*

On the other hand, the Constitution does not protect procedure for procedure's sake. The Fourteenth Amendment, by its terms, does not guarantee due process; it protects against deprivations of life, liberty, or property without due process. Unless a person asserts some basis for contesting a governmental deprivation of life, liberty, or property, he is not injured by defective procedures he has no occasion to invoke. *See Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.5 (1989) (plurality opinion) ("We cannot grasp the concept of a 'right to a hearing' on the part of a person who claims no substantive entitlement that the hearing will assertedly vindicate.").

The principle can best be understood by comparing the Supreme Court's holding in *Carey* with its holding one year earlier in *Codd v. Velger*, 429 U.S. 624 (1977) (per curiam). *Carey* involved claims of two students who were suspended without due process hearings for violating the school's rules. The students sought to challenge the suspensions but were given no opportunity to do so. The district court dismissed their due process complaint on the basis of its finding that the students were guilty of the infractions and would not have prevailed if a hearing had been held. The Supreme Court concluded that even if the suspensions were justified on the merits, the students' "absolute" right to procedural due process

17

entitled them to nominal damages even if on remand the court found that the suspensions were fully justified under the school's rules and policies. *Carey*, 435 U.S. at 266.

*Codd* involved the dismissal of a police officer and the placement of certain information about an attempted suicide in his personnel file. The Court granted certiorari to determine whether the information was of such a stigmatizing nature as to demand a due process hearing. The Court found it unnecessary to reach that question, however, because "[n]owhere in his pleadings or elsewhere has respondent affirmatively asserted that the report of the apparent suicide attempt was substantially false." *Codd*, 429 U.S. at 627. The Court explained that "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing [on the underlying deprivation]." *Id.* "If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him." *Id.* at 627-28.

The distinction between *Codd* and *Carey* lies in adopting an *ex ante* perspective on the right to due process hearings. The *Carey* plaintiffs denied the substance of the underlying allegations made against them. *See Carey*, 435 U.S. at 263 n.19. Their injury, viewed *ex ante*, is that they were denied the opportunity to convince school administrators that they should not be suspended. *See id.* at

261 n.16.  Thus while *ex post*, their loss on the merits precluded any claim for compensatory damages, the denial of the opportunity to sway school officials towards their cause constituted an injury in fact.  By contrast, the plaintiff in *Codd* did not challenge the substantial truth of the damaging material set forth in his file.  Even by his own reckoning of the facts, the hearing would not have vindicated any rights.  There was nothing for the hearing to accomplish.  *Codd* thus establishes that failure to provide a hearing does not violate due process so long as the claimant does not contest the legitimacy of the underlying deprivation.

Our review of the facts in the summary judgment record in the light most favorable to Plaintiffs shows that Mrs. Rector admits she parked in a metered spot and that she did not put any coins in the meter.  She does not assert any legal basis for challenging the ticket.  The closest she comes to such a claim is her statement that "I didn't feel like I was able to dispute the ticket, even though I had some concerns about it."  Rector Dep. 30, App. 998.  The remainder of her deposition, however, makes clear that Mrs. Rector's "concerns" were not in the nature of a challenge to the ticket.  Mrs. Rector stated that the "only reason" she was "suspicious" of the ticket is that she was in a restaurant in view of the street at the time the ticket was given, and did not "see anyone in the area giving parking tickets."  Rector Dep. 37, App. 999; for a more complete version of this explanation, see *id.* at 17-19.  Later, she elaborated that she "was under the

19

impression that the parking meter did not require me to put any money into it after 5:00." She stated that the reason she had this belief is that "the last time I received a ticket in Colorado Springs, that's what the rule was." Rector Dep. 21, App. 767. She admitted, however, that she did not even look at the meter to determine its hours of operation.

These may have been good reasons for her to be surprised that she received a ticket, but they do not constitute a basis for challenging it. Indeed, when asked, "Do you now understand that you parked illegally there?," Mrs. Rector answered, unequivocally, "Yes." *Id*. at 23, App. 997. As a follow-up, counsel asked: "Because in Denver, you're required to put coins past 5:00 p.m. in certain areas. You understand that?" Answer: "I do understand that now." *Id*. at 24, App. 997.

Indeed, Mrs. Rector testified that even at the time she received the ticket, she just said, "Oh, I got a parking ticket. And I remember talking to [my husband] about the fact that I thought I didn't need to put any money in the meter after 5:00. And that was about it. I put the ticket in the car and we left." *Id*. at 40-41, App. 999. She paid the ticket two days later without dispute. She did not testify that, at the time, she believed that her "suspicions" or "impression[s]" about the timing of the ticket, or any other "concerns," might constitute a basis for challenging the ticket.

It is thus undisputed that Mrs. Rector asserted no legal basis for

20

challenging the ticket. Any deficiencies in notice thus caused her no injury, because there was nothing for a hearing to decide. As the Supreme Court stated in *Codd*, "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute" between the individual and the government agency. 429 U.S. at 627. Even assuming that Denver's parking tickets are misleading in the sense that Plaintiffs have claimed, Mrs. Rector does not have standing to bring the suit and to represent the class, because her injury, the payment of the fine, is "fairly traceable" not to the allegedly defective notice but to her lack of any legal defense to the parking ticket.

Appellant Spencer's central claim is likewise dismissed for want of standing. In both versions of his testimony, Mr. Spencer admits that his car remained parked in a metered spot after the meter had expired, that he paid the ticket after the twenty-day period, and that at the time he had no desire to dispute the ticket. Because Mr. Spencer asserts no basis to challenge the ticket, the notice, even if misleading, was not the cause of his injury.

B.    Other Due Process Claims

Plaintiffs' lack of standing mandates dismissal of several other due process claims. Plaintiffs assert that: (i) Denver provides no mechanism through which the late fee may be challenged, (ii) the subsequent notices sent by the City fail to

21

meet basic notice requirements, and (iii) the district court erred in conducting its *Mathews* analysis. We address these claims in order.

Because Mrs. Rector was neither assessed, nor did she pay, the late fee, she has no standing to challenge claims addressing the procedures under which the late fee may be contested. With respect to Mr. Spencer, assuming the late fee was assessed and paid, Mr. Spencer testified that the ticket rested in his glove compartment for about a month before it was paid. By his own admission, therefore, Mr. Spencer has no basis to contest the late fee, and thus lacks standing to represent the plaintiff class on this claim. Similarly, with regard to the subsequent notices, Mrs. Rector lacks standing because she promptly paid her ticket and did not receive any of these notices. While Mr. Spencer claims he received such a notice, he makes no allegation that he suffered any injury on account of it. To the contrary, Mr. Spencer asserts that he had already paid the ticket and the late fee when he received the follow-up notice. We therefore dismiss this claim for lack of standing.

Plaintiffs' lack of standing also mandates dismissal of their claims challenging the district court's application of the *Mathews* factors. *Mathews* provides a framework for determining what procedural protections are due to claimants subjected to a governmental deprivation. However, because Plaintiffs have no standing to contest the alleged due process violation, we have no

22

occasion to review the district court's application of *Mathews* to these circumstances.

C.    Other Claims

Finally, we consider one of Plaintiffs' equal protection claims.[4]  Plaintiffs contend that the City's distinction between ticket recipients who contest the citation after twenty days and lose on the merits (who are assessed the late fee), and those who pay their tickets within the twenty-day allotment (who are not charged with a late fee) creates an unreasonable classification and is in violation of the Equal Protection Clause.  Because neither Mrs. Rector nor Mr. Spencer contested their parking tickets, they have no standing to raise this claim and we affirm the district court's dismissal.

For similar reasons, we affirm the district court's dismissal of Plaintiffs' request for declaratory judgment.  Plaintiffs sought a declaration that the City's administration of its parking regime is unconstitutional pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  It is well established that the Declaratory Judgment Act is remedial and does not itself confer jurisdiction on federal courts, *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 1997), and that plaintiffs must establish an Article III case or controversy as a prerequisite for declaratory relief, *see Aetna Life Insurance Co. v. Haworth*, 300

---

[4]The other is considered below, and decided on the merits.

U.S. 227, 239-41 (1937). The abstract possibility that Plaintiffs may receive a contestable parking ticket in the future certainly does not satisfy Article III's requirements.

### III. Claims Adjudicated on the Merits

In addition to the claims presented above, Plaintiffs assert several challenges to the late fee itself. Specifically, Plaintiffs maintain that their substantive and procedural due process rights are violated because the late fee and the associated twenty-day period are not provided for in the Municipal Code. Additionally, they contend that the federal Equal Protection Clause is violated when the City assesses a late fee to ticket recipients who fail to pay the fine within twenty days.

Because these claims are based on the late fee itself, rather than on the misleading nature of the tickets, standing requirements are satisfied so long as the plaintiff was assessed and paid the late fee. Thus, Mrs. Rector, who does not allege that she paid the late fee, obviously lacks standing to bring any claims regarding the late fee, and her claims are hereby dismissed. As to Mr. Spencer, there is conflicting evidence in the record concerning whether he paid the late fee. In both his affidavit and deposition, Mr. Spencer claims that the late fee was paid in full. On the other hand, despite searching its records, the City has found no indication of issuing a ticket to Mr. Spencer and no record of payment for the

24

alleged ticket. The factual dispute concerning whether Mr. Spencer paid the late fee constitutes a genuine issue of material fact as to justiciability of the asserted claims, *see Essence*, 285 F.3d at 1280, and for summary judgment purposes Mr. Spencer is deemed to have satisfied the standing requirements.

A.  Procedural Due Process Claims

Plaintiffs reason that because the imposition of the late fee is not provided for in the Municipal Code, their procedural due process rights were violated.

It is well established, however, that a state's violation of its own laws does not create a claim under § 1983. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (citing *Davis v. Scherer*, 468 U.S. 183, 194-96 (1984)). Therefore, Denver's alleged failure to follow its own ordinances is actionable only if the City's actions fail to meet basic federal constitutional standards.

Appellants' brief can be construed as raising two potential constitutional due process violations: (i) that the creation and enforcement of the late fee is without any basis or authority in law, and (ii) that the City fails to provide adequate notice to those who allegedly violate its parking regulations. We find both of these claims without merit.

If a city attempted to create and enforce parking regulations with no legal basis whatsoever, federal due process rights might be implicated. Plaintiffs, however, raise no such charge. Rather, Plaintiffs claim that the late fee and the

25

associated twenty-day period do not conform to the mandates of the Municipal Code, which states: "The presiding county judge, and the county judges who hear traffic cases shall specify by suitable schedules the fines for violations of article VII [pertaining to parking violations]." Municipal Code § 54-795. Because the late fee is not a "traffic fine" but a separate penalty assessed for failure to pay the "traffic fine," Plaintiffs argue that the late penalty lies outside the scope of § 54-795. Further, they argue that the City unlawfully increased the amount of the fine without approval of the presiding judge and without providing adequate notice of the fine schedule, as mandated by the City's ordinance.

Even if true, these allegations do not amount to a violation of federal due process protections. Whether the authority granted in § 54-795 includes the right to initiate and enforce a late fee for failure to respond to a parking ticket, and whether Denver's promulgation of the fines and fees has been duly authorized by municipal law is purely a matter of state law and cannot be maintained as an action under § 1983. *See Horn v. City of Chicago*, 860 F.2d 700, 704 n.7 (7th Cir. 1988) (whether Illinois statutes and Chicago City Ordinances allowed Chicago to collect a default judgment in excess of the amount stated on the ticket is "purely a matter of state law involving no federal question" (internal quotation marks omitted)); *see also Davis*, 468 U.S. at 194-96 (state violation of state law or ordinance cannot form the basis of § 1983 liability).

26

To fulfill notice requirements, constitutional due process requires only that parties be informed in a matter reasonably calculated to apprise them of the pending action and provide an opportunity to respond. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Because the parking citations clearly indicate that a late fee of a specified amount will be imposed if the fine is not paid within twenty days, ticket recipients are advised of both the amount of the late fee and the twenty-day response period. Therefore, Denver's asserted failure to follow the procedures set forth in § 54-795 does not implicate federal due process standards.

In addressing substantially the same issues, two other circuits have reached similar conclusions. In *Horn*, the Seventh Circuit overturned the district court's holding that Chicago's notices for parking fines violated procedural due process standards. 860 F.2d at 700. Chicago's notices stated that late fees would be assessed against delinquent recipients, threatened further legal action for non payment, and provided only a phone number for "additional information about this notice" (containing no language about challenging the ticket). *Id.* at 701-02. Despite the paucity of notice, the Seventh Circuit held that because ticket recipients were not deprived of an essential service, were warned about the maximum fines allowed under law, and were provided with a phone number for further information, federal due process standards were satisfied. *Id.* at 704-05.

27

Similarly, despite noting some potential defects in Detroit's parking tickets, the Sixth Circuit held that no due process rights were violated because "the citation clearly states that a hearing is available to contest the City's allegation that the vehicle owner committed a parking violation." *Herrada*, 275 F.3d at 557 (internal citations omitted). We concur with these holdings, and find that because Denver's tickets clearly notified recipients of the nature of the action and amount in contest, the demands of constitutional due process were satisfied.

B. Substantive Due Process Claim

Plaintiffs also assert that because Denver's late fees are not authorized by municipal ordinances, their imposition violates substantive due process. Again, because violations of state and local law do not create claims pursuant to § 1983, *Medina*, 252 F.3d at 1133, we examine this claim exclusively under constitutional standards delineated for substantive due process violations.

The Supreme Court has "always been reluctant to expand the concept of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). Consequently, substantive due process claims are subject to heightened standards. Executive policymaking actions or legislative acts constitute substantive due process violations only if plaintiffs objectively show that such rights are rooted in our nation's history and provide a careful description of the asserted fundamental

28

liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Specific uses of executive power violate substantive due process only when they "shock the conscience." *Lewis*, 523 U.S. at 846-47.

In dismissing this claim, the district court found, and Plaintiffs do not challenge, that the promulgation of fines for parking violations constitutes a legislative act and that enforcement of the fine is an executive action. Plaintiffs have neither argued nor presented any evidence suggesting that the parking regime implicates any historically protected fundamental rights or "shocks the conscience." We thus affirm the district court's dismissal of these claims.

C.    Equal Protection Claim

Plaintiffs assert that the imposition of the late penalty against recipients who fail to pay the fine within twenty days violates the Equal Protection Clause. According to Plaintiffs, this procedure creates an unreasonable classification between those who fail to pay the fine within twenty days and those who pay their fine within the recognized time period and are not subjected to the late fee.

The Equal Protection Clause prohibits state and local governments from treating similarly situated persons differently. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-41 (1985). Unless a suspect class or fundamental right is implicated, a government's classification need only be rationally related to a legitimate government interest. *Nordlinger v. Hahn*, 505

29

U.S. 1, 10 (1992). The record supports the district court's finding that the late fee was established to encourage timely payment of parking citations, and that the City has a legitimate interest in enforcing its parking laws. We agree with these findings and affirm dismissal of this claim.

## IV. Class Certification

Finally, we consider the effect of our holding on the absent members of the class. In general, class issues, including those relating to adequacy of class representation, are within the province of the district court and reviewed only for abuse of discretion. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999). However, because usual principles of both claim and issue preclusion apply in class actions, *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984), in order to protect the interests of the absent class members we find it appropriate to reconsider the class's certification. *See Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207 (6th Cir. 1997) (decertifying class *sua sponte* after determining that specific facts regarding named plaintiffs' case precluded them from representing the class; holding *sua sponte* dismissal by court of appeals appropriate since failure to decertify would adversely affect the interests of absent class members); *see also Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1252-54 (11th Cir. 2000) (because reversal of district court's ruling resulted in named plaintiff maintaining no interest in class claims, *sua sponte* reconsideration

of class certification by court of appeals was merited); *Hines v. United States*, 971 F.2d 506, 508-09 (10th Cir. 1992) (issues which "substantially implicate important concerns beyond those of the parties to an action" may warrant *sua sponte* consideration by appellate court). Unless we decertify the class, the dismissal of named Plaintiffs Rector and Spencer's claims for lack of standing in Part II will preclude absent class members from seeking further redress against the City even if individually they have standing to present these claims.

A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). A representative's individual claim must be typical of the claims of the class members he seeks to represent. *See* Fed. R. Civ. P. 23(a)(3) (requiring that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class"). By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.") (quoting *Prado-Steinman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000)); *see also*

31

*Sample v. Aldi, Inc.*, 61 F.3d 544, 551 (7th Cir. 1995) (when class representative's personal claims are dismissed he has no standing to represent the class).

Thus, with respect to the claims discussed in Part II of this opinion, we find that the claims of the class representatives are not typical of the class as a whole, and remand to the district court for decertification. However, regarding the claims detailed in Part III of this opinion, the district court's certification order remains intact.

Finally, Plaintiffs claim that the district court abused its discretion in certifying the class as a Rule 23(b)(3) class as opposed to a Rule 23(b)(2) class. Because we have ordered decertification of the class and dismissed the remaining claims we do not reach this issue.

## V. Conclusion

We therefore hold that named Plaintiffs Rector and Spencer lack standing to bring the due process and equal protection claims discussed in Part II of this opinion. With respect to those claims, we find that the claims of the class representatives are not typical of the class as a whole and remand to the district court for class decertification. We also hold that Plaintiff Rector and the subclass she represents lack standing to assert the claims discussed in Part III of this opinion. With respect to the claims raised by Plaintiff Spencer and the subclass he represents, and discussed in Part III, we AFFIRM the district court's dismissal

on the merits.  Appellants' motion to strike appellee's response to appellants'

citation of supplemental authority is denied.