**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARK PATRICK HEATH,

      Plaintiff - Appellant,

v.

THE BOARD OF COUNTY
COMMISSIONERS OF BOULDER
COUNTY, STATE OF COLORADO,

      Defendant - Appellee.

No. 02-1002
(D. Colorado)
(D.Ct. No. 01-Z-1421)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

Mark P. Heath brought this case under 42 U.S.C. § 1983 alleging the Board

of County Commissioners of Boulder County (County) violated his substantive

due process and equal protection rights under the United States and Colorado

Constitutions by requiring, in bad faith, proof of legal access to his property prior

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to processing any land use applications. He also alleged a state law claim for abuse of process. The district court granted the County's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (6). We review pursuant to 28 U.S.C. § 1291 and affirm on the sole basis of lack of standing.

### Background

Heath owns real property on Big Horn Mountain in Boulder County, Colorado. Access to the property is by historic Old Wagon Road which intersects with Boulder County Road No. 52. In furtherance of his wish to construct a residence on his property, Heath contacted the Boulder County Land Use Department (Land Use) in 1996. He was informed that before Land Use would process a site plan review application, he would need to secure and provide proof of legal access to his property.[1] Land Use incidentally suggested that Heath consider exchanging his property (the Big Horn Lode Claim) for another property on the mountain (such as the Denver View Claim) to minimize environmental impact from residential development. This option, like the option of building on his own property, would also require proof of legal access. Like the Big Horn Lode Claim, the Denver View Claim and other alternative properties were accessed by the Old Wagon Road. Furthermore, since it was less than thirty-five

---

[1]Land Use had doubts about Heath's legal access to his property because he had informed the Department that access was contested.

acres in size, development on Denver View would require a subdivision exemption.

Heath then requested Land Use consider his subdivision exemption application on the merits before he undertook the task of legally establishing his right of access. Land Use responded it would first make its own determination on the access question. In April 1997, the County informed Heath that his subdivision exemption application could not go forward because, in its judgment, Old Wagon Road was not a county road and did not provide legal access to Heath's property. In response, Heath contended that even if not recognized as a county road, Old Wagon Road was a public road.[2] He requested he be allowed to proceed with his subdivision exemption application and separately settle his right to use the Old Wagon Road across neighboring properties. The County agreed on certain conditions, including that Heath, after approval of any application for subdivision exemption, "provide proof of legal access through court order or other agreements establishing his right of access" to the property on which he proposed to build. (Appellant App. at 276.)

---

[2]Heath maintains the Old Wagon Road was first recognized by Boulder County as a portion of a county road (County Road No. 38, later renumbered County Road No. 52) in a plat recorded in 1976. In 1887, this portion was reconstructed further down the hillside. The reconstructed portion of the road was subsequently declared by the County to be a public road, and it became the portion primarily used by the public. However, the County never vacated the historic portion of County Road No. 38 known as the Old Wagon Road. The County construed the road's legal history otherwise.

Heath never submitted a subdivision exemption application or a site plan review application.  Instead, in September 1997, in an effort to provide proof of legal access via the Old Wagon Road, Heath filed a complaint in state district court against fourteen property owners whose property was traversed by the road or who were otherwise necessary parties, claiming an easement by way of a quiet title action based on prescriptive use of the road, and for a declaratory judgment that the road was public.[3]

In January 1999, the County moved to intervene as a defendant. The County claimed an interest in the outcome, to wit:  if the road was declared public the County's rights, obligations, and responsibilities might be affected.  Specifically, the County was concerned with its responsibility to bear the cost of maintenance and upgrade of the road.[4]   It was also concerned with possible proliferation of

---

[3]One of these defendants was Mr. Douglas Parker, who bought his property in 1973 and built his residence in 1976.  Heath claims Parker was not required to prove the Old Wagon Road was public or otherwise provided legally secure access prior to obtaining his building permit in 1974.  Heath further contends the County and Parker conspired to deny him access to his property.

[4]Colorado defines a public highway to include:
(b) All roads over private or other lands dedicated to public uses by due process of law and not heretofore vacated by an order of the board of county commissioners duly entered of record in the proceedings of said board; (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years . . . .
Colo. Rev. Stat. § 43-2-201.  Additionally, in each county there shall be established a primary and secondary system of roads, Colo. Rev. Stat. § 43-2-108, and the County is responsible for a number of duties for both primary and secondary roads within the

building lots if the road was declared public; that would potentially increase development and cause an increase in regulatory approvals or other permit issuance.  Heath objected to the County's intervention, arguing it was untimely, and the County's claimed interest was too speculative to warrant intervention.[5]  Over Heath's objection, the court allowed the County to intervene as of right.

Shortly thereafter, Heath and all of the original defendants, except Douglas G. Parker, entered into a mutual access agreement conveying mutual permanent easements to one another across their respective properties by way of the Old Wagon Road.[6]  In June, the County offered to purchase a block of real property on Big Horn Mountain, including Heath's property, for $1.3 million.[7]

The state district court conducted a bench trial on the remaining issue of whether the road was public.  In light of the mutual access agreement, the court realigned the parties such that only Parker and the County remained as defendants; previously named defendants joined Heath as plaintiffs.  The court concluded that although the Old Wagon Road had once been a public road by

---

County, including construction and maintenance.  Colo. Rev. Stat. § 43-2-111.

[5]Specifically, Heath contended the fact that the Old Wagon Road was or might be declared public did not translate, under Colorado law, into its being a county road requiring county obligation for maintenance and upgrade.

[6]As to the settling parties, their agreement avoided the public road issue.

[7]In April 2000, the County made a separate offer to purchase Heath's property for $100,000 in furtherance of its "open space program."  (Appellant App. at 252.)

virtue of statute and public use, the County and the public demonstrated a clear intent to abandon the road after 1887. The court further concluded that after 1976, when Parker occupied his property, use of the road was permissive and the road did not become public by prescription. Thus, Heath had no access, either public or private.

Heath appealed the district court decision, including its ruling to allow the County to intervene, to the Colorado Court of Appeals. The court of appeals reversed on the public/private road issue, holding the portion of the Old Wagon Road impacting Heath's property was public and had not been abandoned. It did not address the intervention issue. *Heath v. Parker,* 30 P.3d 746 (Colo. Ct. App. 2000).

The County and Parker joined in a petition for certiorari to the Colorado Supreme Court. Heath filed a conditional cross-petition for certiorari on a series of issues, including the propriety of allowing County intervention. The court denied both petitions.[8] Thus, according to the highest court of Colorado in which the issue has been decided, the Old Wagon Road is a public road that has not been abandoned; it provides access to Heath's land.

---

[8]The Colorado Supreme Court also denied petitions for certiorari filed by other Respondents/Cross-Petitioners.

## *District Court*

On July 25, 2001, Heath filed an action against the County in federal district court.[9]  He presented three claims, grounded alternatively in federal[10] and state law:  1) violation of his right to substantive due process; 2) violation of his right to equal protection of the law; and 3) abuse of process.  He prayed for compensatory, consequential and punitive damages.

First, Heath claimed the County violated his right to substantive due process under the United States and the Colorado Constitutions.[11]  In particular, Heath alleged the County attempted to depress the value of his property by requiring proof of legal access as a precondition to further development.[12]  He asserted a protectible property interest in his right to seek the necessary building permits in order to build a residence on his property, an interest the County abjured by acting in a manner not in keeping with its legitimate police power to regulate land use through zoning and the permit

---

[9]The First Amended Complaint is the operative pleading.

[10]Heath brought his federal claims under 42 U.S.C. § 1983.

[11]U.S. Const. amend. V, amend. XIV, § 1; Colo. Const. art. II, § 25.

[12]Interestingly, Heath does not dispute the County has a right to condition commencement of the permitting process with proof of access.  We understand his complaint to be that the County has no right to do this for the improper purpose of depressing the value of his property.

process.[13]  In addition, Heath claimed the County's intervention in his state access case was driven by the improper purpose to devalue his land and lacked a cognizable basis in law.

Second, Heath claimed the County violated his right to equal protection of the laws under the United States Constitution[14] and his right to equal treatment guaranteed by the Colorado Constitution[15] by intervening in his access case while failing to do so in similar cases.  He also claimed disparate treatment in that Parker was not required to provide proof of legal access to his property in order to obtain a building permit in 1974, some eighteen years earlier.  Finally, Heath stated a claim of abuse of process under Colorado law because the County intervened without good reason in his state access case.

The County filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) [lack

---

[13]Heath alleged the County's intervention in the state access action as well as its requirement that he provide proof of legal access were both based upon improper motives.  He claims the County wanted to obtain and maintain open space in the area by obtaining his property without paying for it, or at least obtaining it at a decreased market price.  He claims that after the state court trial, but before the court's ruling, an Assistant County Attorney told reporters the reason the County [intervened and] went to trial was because the County could save a million dollars if the road was declared private, because the property's market price would decrease.  (Appellant App. at 254.)  It is unclear whether this bold allegation of an ill purpose, or the County's stated purpose for its motion to intervene was the true motivation for intervention.  In reviewing the district court's order granting the County's motion to dismiss we assume the ill motive asserted by Heath.

[14]U.S. Const. amend XIV, § 1.

[15]Colo. Const. art. II, § 25.

-8-

of subject matter jurisdiction] and (6) [failure to state a claim]. The district court dismissed the federal claims on the grounds the *Rooker-Feldman*[16] doctrine deprived the court of jurisdiction, inasmuch as Heath was asking the federal court to review the state district court's decision to permit the County's intervention. In the alternative, the court dismissed the federal claims for failure to sufficiently allege a property interest protected by substantive due process, failure to sufficiently allege disparate treatment as part of the equal protection claim and lack of standing. Finally, the district court dismissed the state abuse of process claim for failure of pendent jurisdiction.[17]

We review the district court's Rule 12(b)(1) dismissal "de novo, applying the same standard as the district court." *Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002). "We accept the complaint's factual allegations as true and ask whether the complaint . . . is legally sufficient to state a claim for relief." *Id*. Where, as here, the challenge to jurisdiction is a facial one that does

---

[16]Essentially, "[t]he *Rooker-Feldman* doctrine 'bars a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Johnson v. Riddle*, 305 F.3d 1107, 1116 (10th Cir. 2002) (quoting *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998)), *remanded to* _____ F.Supp.2d _____, 2003 WL 22995172 (2003).

[17]The record is unclear as to the disposition of Heath's claims under the Colorado Constitution. Although the district court did not explicitly so state, we consider its dismissal of pendent state claims to include Heath's claims under the Colorado Constitution.

not dispute the complaint's factual allegations, we accept those factual allegations as true and accord Heath the benefit of all reasonable inferences to be drawn therefrom. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

### *Standing*

Standing is a doctrine that restricts our jurisdiction. It is emergent out of the case or controversy requirements of Article III of the United States Constitution. *Board of County Comm'rs of Sweetwater County v. Geringer,* 297 F.3d 1108, 1111 (10th Cir. 2002). "Although the standing question is often dressed in the dazzling robe of legal jargon, its essence is simple--what kind of injuries are courts empowered to remedy and what kind are they powerless to address?" *Schaffer v. Clinton,* 240 F.3d 878, 883 (10th Cir.), *cert. denied*, 534 U.S. 992 (2001). "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 486 (1982). It depends upon whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.] This is the gist of the question of standing." *Baker v. Carr,* 369 U.S. 186, 204 (1962). "[W]e must put aside the

-10-

natural urge to proceed directly to the merits of [a] dispute and to settle it for the sake of convenience and efficiency," without first resolving the question of standing. *Raines v. Byrd,* 421 U.S. 811, 820 (1997) (quotation omitted), because "[t]he warnings against unrestrained exercise of the power of judicial review . . . by relaxation of the standing requirements are numerous and dire." *Utah v. Babbitt,* 137 F.3d 1193, 1202 (10th Cir. 1998). In meeting his or her burden to establish jurisdiction, "a litigant must clearly and specifically set forth facts sufficient to satisfy [the] Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas,* 495 U.S. 149, 155-56 (1990).

"The constitutional requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged act, and (3) a likelihood that the injury will be redressed by a favorable decision." *Roe No. 2 v. Ogden,* 253 F.3d 1225, 1228-29 (10th Cir. 2001).[18] The plaintiff bears the burden of establishing standing, and each element of standing must be established with the degree of proof necessary to survive each successive stage of litigation. *Rector v. City & County of Denver,* 348 F.3d 935, 942-43 (10th Cir. 2003) (quoting *Lujan*

---

[18]A litigant must also meet prudential standing requirements consisting of a set of judicially-imposed limits on federal jurisdiction. *Sweetwater County,* 297 F.3d at 1112. Since Heath fails to meet constitutional requirements for standing, we need not reach prudential requirements.

*v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing, therefore, it is not enough to sufficiently allege constitutional error (the challenged acts); a plaintiff must also sufficiently allege injury suffered as a consequence of the error. *See Utah v. Babbitt,* 137 F.3d at 1205-06. *See also Bear Lodge Multiple Use Ass'n v. Babbitt,* 175 F.3d 814, 822 (10th Cir. 1999) (plaintiffs failed to allege personal injury suffered as a result of alleged unconstitutional action and thus lacked standing), *cert. denied*, 529 U.S. 1037 (2000)*; Valley Forge,* 454 U.S. at 485-86 (drawing a clear distinction between unlawful conduct and resulting injury). The injury resulting from the alleged invasion of a legally protected interest cannot be abstract. *Phelps v. Hamilton,* 122 F.3d 1309, 1316 (10th Cir. 1997). It must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," and it must be fairly traceable "to the action of the defendant," *Rector,* 348 F.3d at 942, not to the "independent action of some third party not before the court." *Lujan,* 504 U.S. at 560 (quotation omitted). Although, on a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim," *Id.* at 561 (quotation omitted; alteration in original), still, we abhor conclusory allegations. *Hall v. Bellmon,* 935 F.2d 1106, 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

-12-

With these constitutional principles in mind, we examine whether Heath has sufficiently pled standing. We conclude he has not.

Even assuming Heath has sufficiently stated cognizable violations of his rights to substantive due process and equal protection, he must still demonstrate injury as a result of the County's alleged unconstitutional actions in order to have standing. This he concedes. To this end, he alleges he was injured in the following ways:

1. *If* the County was successful in depriving Heath of access to his property, it "*would have* the effect of drastically reducing the value of his property. Indeed, it *would* prevent all viable use of the land." (Appellant App. at 252) (emphasis added).

2. As a result, the County "*could have* secured open space without the need for purchasing it at all, or alternatively, force[d] a sale through condemnation at a price substantially below fair market value with access." (*Id.*) (emphasis added and quotation omitted).

3. The fair market value of his lot, assuming no impediment to access, was $100,000 - $130,000. The County's ill-intentioned intervention in the state access case effectively reduced the value of his land by dramatically increasing his costs to prosecute his case to establish access. (*Id.* at 255.)

4.  He never would have filed a quiet title action if he had known the County would move to intervene. The County's action cost him $200,000 in legal fees, costs and other expenses. Furthermore, by its intervention the County slandered the title to his property. (*Id.* at 256.)

5.  As a result of the County's unconstitutional actions, he has been unable to use his property for six years. (*Id.* at 255-56.)

The first two listed injuries are not cognizable for the simple reason that they are neither "concrete" nor "actual." *Rector,* 348 F.3d at 942. The unavoidable fact is that Heath prevailed in his state access case. Therefore, the County was never in a position to reduce the value of his property, prevent its use, acquire it as open space without purchase or force a sale through condemnation at less than fair market value. Heath's claimed injuries are "conjectural" and "hypothetical," and therefore insufficient to provide a basis for standing. *Id.* Since entry of the Colorado Court of Appeals decision reversing the decision of the state district court, Heath has been free to proceed with the permitting process for development of his land.

Even assuming Heath's remaining alleged injuries are "concrete" and "actual," they are not fairly traceable "to the action of the defendant." *Id.* Heath argues that if the County had not taken the position that the Old Wagon Road was

private, a position imbued with the ill motive to depress the value of his land, he would never have had to file the state access case. He suggests that without the confidence imparted by the County's position, Parker would never have resisted granting an easement to Heath. This argument fails for two reasons.

First, the way in which Heath framed his requested relief in the state access case invited the County's intervention. To this extent, he is the author of any injury he sustained by prolonged litigation. The County only required Heath to prove legal access to his property as a post-approval condition of his subdivision exemption application. He could have attempted to acquire legal access at the outset by means of a private mutual agreement with his neighbors. This approach would have obviated any County involvement. In the alternative, he enjoyed the right to condemn a private right-of-way to his property, another option he did not elect to pursue. *Minto v. Lambert,* 870 P.2d 572, 576 (Colo. Ct. App. 1993). There is no reason to believe this option would have invited the intervention of the County. Abjuring these alternatives, Heath filed a quiet title action seeking an easement against neighboring property owners based on prescriptive use, and a declaratory judgment that the Old Wagon Road was public. This, not surprisingly, invited the County's intervention.[19] The state district court made a

_____

[19]Heath complains the County should have accepted his argument that the Old Wagon Road was public even though not maintained by the County and, as such, the County had no obligation to maintain it. He contends the County should have declined

-15-

good faith judgment to permit intervention, and, under the *Rooker-Feldman* doctrine,[20] we cannot gainsay its decision. All of Heath's alleged injuries in the way of legal expense, alleged slander to title, and inability to use his property, are attributable not to the County's intervention, but to the fact that Heath brought an action that clearly invited the County's motion to intervene and where the "independent action of [a] third party" (the state district court) permitted intervention. *Lujan,* 504 U.S. at 560.

Heath's argument that his injuries are attributable to the County fails for a second reason. As earlier noted, the Old Wagon Road traversed Parker's property, and he was unwilling to grant an easement to Heath. Heath asserts that had the County not intervened, Parker would not have been emboldened to resist Heath's request for an easement across his property. Yet Heath provides no basis for supposing this is so. It is equally likely that Parker would have resisted Heath's passage across his land whether the County intervened or not. To suppose otherwise would be entirely speculative. Therefore, Heath's claimed

---

intervention based on the persuasiveness of his argument. In failing to do so, he contends the County demonstrated an improper intent to depress the value of his land. However, Heath cannot complain when a party does not accept his legal theory and instead moves to intervene in an action he himself has brought and where its interests are squarely at issue.

[20]*See* n.16.

injuries are as easily attributable to the "independent action" of Parker's intransigence as to the County's intervention in his case. *Id.*

In sum, Heath has failed to sufficiently allege his injuries were concrete and actual or, in the alternative, traceable to the action of the County. His claimed injuries simply do not bear up under the weight of the test we must apply. He therefore lacks standing to press his claims in federal court. This being so, we need not reach the merit of his claims. His federal claims failing, so too do his pendent state claims. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988); 28 U.S.C. § 1367(c)(3).

Accordingly, we **AFFIRM** the order of the district court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge