HAMILTON, Circuit Judge,
joined by WOOD, Chief Judge, and ROVNER and WILLIAMS, Circuit Judges, dissenting.
I respectfully dissent from the affir-mance of the dismissal of this case, though I share a good deal of common ground *563 with the opinion by Judge Posner. We agree that being arrested is not a service to the person arrested. We agree that the plaintiff has standing to challenge the arrest fee policy despite having pled guilty to the offense for which he was arrested. We also agree that there is a critical constitutional difference between an arrest fee and an administrative fee for bail.
Our point of disagreement is that, in the face of a plainly unconstitutional fee for the privilege or “service” of being arrested, Judge Posner has chosen not to decide the case that has actually been presented to us. His opinion chooses instead to decide a different case, one shaped by rewriting the ordinance and overlooking the plaintiff’s allegations. That approach avoids the troubling due process analysis of the now-vacated panel opinion, but at the cost of disregarding basic rules of civil procedure and misusing the doctrine of constitutional avoidance.
Judge Posner’s opinion finds a difference between the meaning of the ordinance and the village’s actual practice of collecting arrest fees. Even if that’s correct, it would not warrant dismissal. The plaintiff alleged in his complaint that his rights were violated by the village’s actual policy and practice of charging the fee for arrest, whether or not that policy complied with the ordinance. Nor is there any factual dispute about how the policy functioned in practice. Through three years of litigation, the village has said over and over that it in fact imposed the arrest fee on everyone who was arrested simply because they were arrested.
Judge Posner’s opinion has transformed an unconstitutional fee for going into jail into something it never was in practice: an administrative fee for getting out of jail. We should instead decide the case the parties have actually presented and hold the arrest fee unconstitutional. The Due Process Clause of the Fourteenth Amendment does not allow a state or local government to deprive a person permanently of even a modest amount of his property based on nothing but the unreviewable say-so of one police officer. The victim of such an arbitrary policy has standing to challenge it at the moment his property is taken. That remains true regardless of whether the deprivation might have been constitutional under a very different ordinance or policy that would have imposed the fee on a different basis, such as posting bail or being convicted of a crime.
I. The Transformation of the Case
A Woodridge police officer arrested plaintiff Jerry Markadonatos for shoplifting. When he was booked into the local jail, he was charged an “ArresVBooking Fee” of $30. The fee applied to every arrest, period. It applied regardless of whether the arrestee posted bail, regardless of whether he was ever prosecuted, regardless of the outcome of any prosecution, and even regardless of the validity of the arrest. Plaintiff paid the money and then sued, for its return, alleging that the fee deprived him and all other arrestees of property without due process of law.
The full language of the ordinance, repealed shortly before we granted rehearing en banc, provided: “The fees for the following activities and purposes shall be as follows: (A) Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant — $30.00.” Judge Posner is correct that the ordinance was not well-drafted. But throughout the litigation, the parties have agreed that a person had to pay the fee just because he was arrested. That’s how the ordinance was administered, and that’s the case presented to us.
Judge Posner’s opinion concludes, however, that the plaintiff, the village, their lawyers, the district judge, and the three- *564 judge panel have all misunderstood the ordinance. In our en banc oral argument, the suggestion was raised for the first time that the ordinance could be read as imposing a fee only when a person posted bail or bond, regardless of whether it was for a custodial arrest, a warrant, or any other form of legal process. Recognizing how troubling an arrest fee would be under the Due Process Clause, Judge Posner’s opinion adopts this new interpretation by invoking the doctrine of constitutional avoidance.
This transformation of the case ignores the most basic constraint in deciding a motion to dismiss under Rule 12(b)(6): treat as true the factual allegations in the plaintiffs complaint. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The complaint here alleges a policy and practice of imposing the fee based solely on the fact of arrest, in violation of the Constitution. Those allegations stand regardless of whether the village misinterpreted its own ordinance, and regardless of whether other events (like posting bail or later pleading guilty) might have justified a different fee under a different hypothetical ordinance.
The plaintiffs complaint makes clear that his case depends not on the wording or abstract interpretation of the ordinance but on the village’s actual policy and practice of collecting an arrest fee just for going into jail. Paragraph 1 of the First Amended Complaint (the operative one at this stage) alleges: “The booking fee policy is procedurally and substantively unconstitutional.” The complaint refers several more times to the booking fee policy. See ¶¶ 3, 4, 15,16, 37. Other allegations in the complaint also describe the Village’s actual practice, regardless of whether that practice was authorized by the ordinance. See ¶¶ 17, 20, 25, 26, 36, 45. The plaintiff alleges that the money was taken from him upon booking, not when he made bail (which he paid separately). And the complaint does not even mention bail or bond.
During the en banc argument, counsel for the plaintiff stated in response to questioning that his client paid $150 for release on bond. That fee was different from the arrest fee at issue here. When reviewing a Rule 12(b)(6) dismissal, we can and should consider such new factual assertions as long as they are consistent with the complaint. Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 555-56 (7th Cir.2012); Veazey v. Communications & Cable of Chicago, Inc., 194 F.3d 850, 861 (7th Cir.1999). This is especially so when the new information is provided in response to questions that had not been considered even relevant before the argument.
Exhibits attached to the complaint are also part of the complaint, of course. See Fed.R.Civ.P. 10(c); Tellabs, 551 U.S. at 322, 127 S.Ct. 2499. The receipt the village gave the plaintiff is part of this complaint. Judge Posner’s opinion does not mention the receipt, and it’s flatly inconsistent with his theory. The heading says “Arrest/Booking Fee Notice.” The text says: “You are hereby notified that under Village Ordinance # 5-1-12, an administrative fee of $30.00 is required upon completion of any custodial arrest/booking procedure. The Complainant named above by its Police Officer, on oath states that you were arrested on: [date of arrest, name, date of birth, and address].” The receipt goes on to say that “Fee of $30.00 is due fifteen days from date of arrest.” The receipt thus shows a fee imposed for arrest, not for release on bail. In fact, noth *565 ing in the receipt suggests the fee has anything to do with bond, bail, or release from jail, and the provision for delayed payment obviously does not fit with a fee for posting bail.
The limited record before us is thus fully consistent with the plaintiffs allegations that he was charged the fee for his arrest. Judge Posner’s opinion points to nothing that would even contradict that account, let alone resolve such factual issues against the plaintiff on a motion to dismiss. We do not know if the plaintiff was charged additional fees when he posted bond — only that the bond itself cost $150. What matters at this stage is that the plaintiff has plausibly alleged that he was charged $30 for being arrested — and only for being arrested. We have no basis for concluding otherwise.
As if the plaintiffs allegations were not enough, the village has never disputed the factual foundation of his case: that the arrest fee is triggered only by arrest. Nor has the village ever claimed the fee had anything to do with release from jail, despite being fully aware of the cases approving administrative fees for state bail-bond systems. That was not an oversight by counsel. It was simply an acknowledgment that this was in fact an arrest fee, not a bond fee. The village has argued instead that the fee was justified by the “service” of being arrested, such as the “services” of being photographed and fingerprinted. No member of the en banc court has endorsed that ludicrous defense.
The village has even tried to make a virtue of the arrest fee’s simplicity. At every step of the case, the village has argued that the three-factor due process test under Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), shows there is no need for any additional procedural protections. Why? Because the only issue is whether the person being charged the arrest fee has actually been arrested, and there is virtually no chance of a mistake about that fact. The district court and the panel majority both agreed and made this simple syllogism the foundation of their decisions. See Markadonatos v. Village of Woodridge, 2012 WL 2128386, at *3 (N.D.Ill. June 11, 2012), aff'd, 739 F.3d 984, 989-90 (7th Cir.2014), vacated (March 17, 2014).
Instead of crediting the village’s explanation for how it enforced the ordinance, Judge Posner’s opinion goes through procedural contortions to construct a different past policy and decides the case on that basis. But the bottom line is that the plaintiff has alleged — and the village has not even disputed — a set of facts that present a viable claim for damages for violation of his federal constitutional rights by reason of a municipal policy. See Monell v. Dep’t. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The viability of that claim simply does not depend on whether we can interpret the ordinance better than the village that administered it.
II. Constitutional Avoidance?
Faced with the consistent account of the arrest fee policy in the plaintiffs allegations, the village’s arguments, and the decisions of the district court and the appellate panel, Judge Posner’s opinion asserts that all have been mistaken. The opinion offers its novel interpretation of the ordinance in the name of constitutional avoidance, the practice of interpreting statutes so as to avoid serious constitutional issues if that can be done without undue violence to the statutory language.
Because the Supreme Court has upheld certain administrative fees for the service provided by state bail-bond systems, Judge Posner prefers to read the ordinance as imposing the fee solely for posting bond and not for the mere fact of *566 custodial arrest. See Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); see also Payton v. County of Carroll, 473 F.3d 845 (7th Cir.2007). The opinion overlooks that the fees in Schilb and Payton were optional, unlike the village’s arrest fee here. In those cases, arrestees had other options for obtaining release, and bail decisions were of course subject to court supervision.
While constitutional avoidance has been criticized extensively as an interpretive tool, it retains a secure place in Supreme Court decisions.[1] If the plaintiff were seeking only injunctive or declaratory relief about how the village should administer the ordinance going forward, constitutional avoidance would thus offer a plausible basis for resolving the case without invalidating the ordinance.
The problem here is that the plaintiff is seeking damages for an unconstitutional policy practiced in the past. Judge Posner has not cited any cases using the doctrine of constitutional avoidance in this context, and for good reason. The doctrine is meant to function in the mold of Professor Bickel’s “passive virtues,” minimizing friction between branches of government by deciding cases on narrow grounds where possible. Alexander Bickel, The Least Dangerous Branch 175-83 (2d ed.1986); see also Clark v. Martinez, 543 U.S. 371, 381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (avoidance meant to give effect to legislature’s intent instead of “subverting it” by invalidating statute).
Properly understood, constitutional avoidance is a mechanism for saving legislation for the future, not a device for wishing away past violations of constitutional rights. The cases cited by Judge Posner reflect this limitation. In every such case, constitutional avoidance was used to limit the government’s actions or to deal with requests for injunctive relief, not to excuse past violations of constitutional rights. See Rust v. Sullivan, 500 U.S. 173, 181, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (plaintiffs sought injunction and declaratory relief); Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 317, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (plaintiffs sought to enjoin performance of contract); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (interpreting statute to permit judicial review of ALJ’s award of worker’s compensation); Hooper v. California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297 (1895) (affirming criminal conviction by declining to read state statute as having extraterritorial application); Parsons v. Bedford, 28 (3 Pet.) U.S. 433, 7 L.Ed. 732 (1830) (reading federal statute to limit appellate review of jury verdict and thus to preserve Seventh Amendment rights). Other prominent cases endorsing constitutional avoidance are similar. See Clark, 543 U.S. at 381-82, 125 S.Ct. 716 (aliens in detention entitled to habeas corpus relief); Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (denying enforcement of NLRB order); NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 499-501, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) (denying enforcement of NLRB order); United States ex rel. Attorney Gen. v. Delaware & *567 Hudson Co., 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909) (government sought to enjoin vertical integration of coal producers and railroads).
Constitutional avoidance simply has no place in a case like this, where the plaintiff has alleged a claim for damages for a past violation of his constitutional rights. Judge Posner’s novel revision of the village’s ordinance therefore provides no basis for affirming the Rule 12(b)(6) dismissal of the plaintiffs claim for damages.[2]
III. The Merits of the Village’s Actual Policy
Returning to the merits of the case actually presented to us, this is a simple case. The village took property from all arres-tees without due process of law. The deprivations occurred at the time of arrest, immediately and finally. The ordinance allowed no room for dispute or review of any kind. The deprivations occurred based on only the say-so and perhaps even the whim of one arresting officer, regardless of whether the arrestee was ever prosecuted or convicted, and regardless of whether the arrest was lawful in the first place. By no stretch of the imagination can that be due process of law.
A good deal of ink has been spilled in this case (by me and others) on whether the problem is better understood in terms of procedural due process or substantive due process. The village has defended the fee with a strategy of divide-and-conquer. If the claim is limited to a procedural due process theory along the lines of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the issue is how much process is needed, and when, to decide a disputed factual or legal question, the village defends the lack of any process on the simple theory that there is no serious chance of an error in imposing the fee. If the claim is limited to substantive due process, the village argues that the plaintiff has no “fundamental right” in an amount of cash that most lawyers and judges would view as modest, and the substantive result — a $30 fine for (suspected) criminal conduct — does not shock anyone’s conscience.
The problem is actually more fundamental than these two distinct branches of modern due process jurisprudence: the arrest fee denies due process because it imposes a permanent deprivation of property based on the unreviewable decision of one police officer. We don’t tolerate such arbitrary government deprivations even for parking tickets. See Van Harken v. City of Chicago, 103 F.3d 1346, 1350 (7th Cir.1997) (rejecting due process challenge to parking ticket regime because it allowed for administrative and judicial review); Gardner v. City of Columbus, 841 F.2d 1272, 1276-77 (6th Cir.1988) (same). The village’s arrest fee provided neither process nor law in any recognizable form. This arrest fee is indistinguishable from a fee the police might charge merely for subjecting you to a traffic stop, a breathalyzer test, a Terry stop and frisk, or for executing a search warrant at your house.
Why would all of those fees be unacceptable? The constitutional guarantee of due process is at bottom a requirement that the government act according to the rule of law. That requirement is implicit in the phrase “due process of law” itself and evident from its long history since King John promised in the Magna Carta not to dispossess or imprison his subjects except “by the law of the land.” Influenced by *568 this history, our Nation’s founding generation sought to ensure the rule of law so that neither a tyrannical executive nor any other organ of government could impose its will arbitrarily. See, e.g., Thomas Paine, Common Sense (1776), reprinted in The Great Works of Thomas Paine 33 (1877) (“For as in absolute governments the king is law, so in free countries the law ought to be king”); John Adams, A De-fence of the Constitutions of Government of the United States of America, in 4 The Works of Johns Adams 404 (1851) (“where the public interest governs, it is a government of laws, and not of men”); The Federalist No. 51 (James Madison) (noting dangers of any branch of government becoming too powerful).
This commitment to the rule of law runs throughout the Supreme Court’s due process jurisprudence, which has long reflected the “traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, was ‘intended to secure the individual from the arbitrary exercise of the powers of government.’ ” Daniels v. Williams, 474 U.S. 327, 331-32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), quoting Hurtado v. California, 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884), quoting Bank of Columbia v. Okely, 17 U.S. (4 Wheat.) 235, 244, 4 L.Ed. 559 (1819). This foundation is obvious both in cases applying the substantive strand of due process, see County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (“Since the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action.”), as well as in purely procedural cases, see Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (“The touchstone of due process is protection of the individual against arbitrary action of government.”); Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (procedural protections such as notice and a hearing “protect against arbitrary deprivation of property”).
A fee based on the unreviewable say-so of one police officer is an arbitrary deprivation of property. An arrest fee of $30 does not, of course, threaten the end of individual liberty or property rights as did the confiscation of an English baron’s entire estate. But the village’s arrest fee still imposed permanent deprivations of property on everyone arrested in the village. And as Judge Posner’s opinion acknowledges, that deprivation cannot seriously be justified as a service to the arrestee.
If the theory is that the arrestee has done something criminal to justify the arrest and the fee, as the district judge and panel majority reasoned, that’s a question we answer through the due process provided by the criminal justice system, not on the unreviewable say-so of one arresting officer. See In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Even a suspect’s confession to an officer on the spot is only evidence. It does not entitle the officer to impose judgment and punishment.
Contrary to Judge Easterbrook’s opinion, even where an arrest is supported by probable cause — and again, the village imposed this arrest fee regardless of whether it was — probable cause is too low a bar to justify a permanent deprivation of property. Permanence of the deprivation is the key difference between this case and forfeiture cases like Kaley v. United States, — U.S. -, 134 S.Ct. 1090, 1098, 188 L.Ed.2d 46 (2014). They allow temporary interference with property on the basis of probable cause but have never suggested probable cause is sufficient for a permanent deprivation. Nor is it any answer to say that because the police can hold an *569 arrestee for up to 48 hours without bringing him before a judge, see County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the fact of custodial arrest justifies extra deprivations of liberty or property. Unlike the temporary limits on the arrestee’s freedom of movement in the hours before he can see a judge, the $30 fee is not an inevitable consequence of custodial arrest.[3]
Finally, Judge Posner suggests (at page 551) that the plaintiff here doesn’t really have much to complain about. The fee could have been constitutional under a different ordinance, such as one written to impose the fee only after a plea or judgment of guilty, and this plaintiff admitted the offense here. The first problem with that suggestion is that that’s not what the village did. The second problem is that the right to fair procedure applies to the innocent and guilty alike. E.g., Carey v. Piphus, 485 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (“the right to procedural due process is ‘absolute’ in the sense that it does not depend upon the merits of a claimant’s substantive assertions”).
IV. The Plaintiffs Standing to Sue
A majority of the court agrees that the plaintiff has standing to challenge the village’s policy. Judge Sykes takes a different view in her opinion and would instead remand the case to the district court to dismiss for lack of standing. Judge East-erbrook agrees with her in part. Because the plaintiff pleaded guilty to shoplifting, and the government can impose fines on those who are found guilty of a crime, Judge Sykes would hold that the plaintiffs injury of being charged the $30 is “not fairly traceable to the Village’s allegedly unconstitutional conduct.” Sykes, J., at page 29. This approach confuses the merits of the plaintiffs claim with his standing to bring it, and the approach is based on a different ordinance or policy than the one actually before us.
Standing is an inquiry separate from the merits and is not a difficult hurdle to clear, especially for a plaintiff who asks for the return of his property taken by the government. See, e.g., Construction Indus. Ret. Fund of Rockford v. Kasper Trucking, Inc., 10 F.3d 465, 467 (7th Cir.1993) (“a litigant doomed to lose does not for that reason lack standing to sue”). As we recently explained:
At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it. This is constitutional law 101.
United States v. Funds in the Amount of $571,810, 719 F.3d 648, 651 (7th Cir.2013).
The requirements for standing are easily satisfied here. The plaintiff suffered an injury when the village took his $30. He alleges that the money was taken pursuant to the defendant’s unconstitutional policy of collecting the money from all arrestees. A court could redress his injury by finding the policy unconstitutional and awarding damages. That’s enough. See, e.g., Lu- *570 jan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing does not depend on whether the plaintiff will ultimately prevail on his constitutional claim. Nor does standing depend on whether the village might have been able to justify a $30 fee under a different policy or ordinance that has not been alleged by the plaintiff or supported by the pleadings (or even argued by the village).
Like Judge Posner, Judge Sykes would resolve this case by hypothesizing yet a different municipal practice or ordinance than the one actually alleged here, but she relies on a third version. Because the village could have charged those it arrested a $30 fine upon their conviction, she reasons, this plaintiff lost standing to challenge the village’s actual policy of charging all arrestees at the time of arrest when he entered a guilty plea. But Article III standing is no more appropriate a tool for rewriting the arrest fee than is the doctrine of constitutional avoidance.
Under the village’s actual policy, the due process violation occurred at the moment the arrestee was brought to jail and paid the $30 fee for no reason other than his arrest. That was an arbitrary deprivation of property without any process of law. And at that moment after payment, plaintiff Markadonatos or any other arrestee had a ripe due process claim.
Anything that happened later — posting bail, pleading guilty, or anything else — is irrelevant to the constitutional question. It’s irrelevant because what happened later was irrelevant under the village’s own policy. The plaintiff and all other arres-tees paid the fee regardless of whether they ever faced charges or were ever convicted. They all suffered the same denial of due process the minute the money was taken from their pockets. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (procedural safeguards apply “whatever the ultimate outcome of a hearing”), quoting Fuentes v. Shevin, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The fact that the fee might have been lawfully imposed on some arrestees under a different hypothetical policy — one that charged the fee only to those ultimately convicted — does not save the village’s actual practice any more than a subsequent criminal conviction could justify a mandatory fee for a traffic stop, a Terry stop and frisk, or execution of a search warrant.
The due process violation here is so fundamental that plaintiffs standing cannot be defeated by Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), or Rector v. City & County of Denver, 348 F.3d 935 (10th Cir.2003), the reasoning of which Judge Sykes endorses. Those cases addressed an unusual wrinkle in the law of procedural due process. They held, Codd on the merits and Rector on standing, that the plaintiffs had no viable basis for demanding more process when there was no underlying dispute that a hearing could have resolved. Codd and Rector would be relevant here if the village had adopted a different policy or ordinance, to collect an arrest fee from each arrestee who was convicted of a crime arising from the arrest.
That’s not this case. Although this plaintiff also argues that he was denied sufficient process, he does not seek a meaningless hearing to determine whether he was arrested or not. He instead challenges the arrest fee as an utterly arbitrary deprivation of property. It was imposed permanently by the unreviewable act of one police officer, with no process at all. Codd and Rector were simply not addressed to such a basic violation of due process.
*571 V. The Silver Linings
The result of the court’s en banc vote is bad news for plaintiff Markadonatos. His later guilty plea seems to have made him an unsympathetic champion for due process, but he should be allowed to pursue his claim and to seek class certification.
Yet for others who were required to pay the Woodridge arrest fee or who might be required to pay similar fees in the future, there are actually some silver linings in the en banc decision: (1) The erroneous panel opinion has been vacated. (2) A majority of court signals clearly that any similar arrest fee is likely to fail a future due process challenge. (3) A majority of the court finds that plaintiff has standing to assert his claim. (4) Judge Posner’s procedural contortions to avoid the effect of plaintiffs actual allegations have not been endorsed by a majority of the court. (5) No theory for denying relief has the support of a majority of this court. So while I respectfully dissent from affir-mance of dismissal in this case, I hope these signals will discourage the Village of Woodridge and any other governments from adopting a new arrest fee or policy and risking similar litigation and a fee award under 42 U.S.C. § 1988.[4]

. For critiques, see, e.g., Frank H. Easter-brook, Do Liberals and Conservatives Differ in Judicial Activism? 73 U. Colo. L.Rev. 1401, 1405-06, 1409 (2002) (describing this interpretive canon as "noxious,” "wholly illegitimate,” and "a misuse of judicial power”); Richard A. Posner, Statutory Interpretation— in the Classroom and in the Courtroom, 50 U. Chi. L.Rev. 800, 815-16 (1983) (canon has effect of unduly enlarging "already vast reach of constitutional prohibition”); Henry J. Friendly, Benchmarks 210-12 & n. 88 (1967) (canon has "almost as many dangers as advantages” and should not be used to dismiss indictments or civil complaints before the facts sure developed).

. If plaintiff can prove the alleged policy, the village should be liable for damages whether or not it had repealed the ordinance. Judge Posner’s discussion on page 550 of the incentives for local governments is thus something of a non sequitur.

. My colleagues’ focus on whether an arrest was made with probable cause misses the constitutional point for another reason. Probable cause was simply not relevant under the village’s ordinance and policy. Moreover, a person can be arrested with probable cause without having done anything wrong, or even anything suspicious. Consider a case of mistaken identity, where a police officer conducting a traffic stop learns there is an outstanding arrest warrant for someone with the same name as the driver. An arrest may be made with probable cause, but there is no justifiable reason for charging the arrestee a fee for the experience.

. Readers interested in the precedential effects of our court's divided vote, where no one judgment garnered a majority, may find an interesting discussion of the phenomenon in Michael L. Eber, When the Dissent Creates the Law: Cross-Cutting Majorities and the Prediction Model of Precedent, 58 Emory L.J. 207 (2008), and sources cited therein.