**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**November 21, 2017**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE EUROGAS, INC.,

    Debtor.

_____

THE SLOVAK REPUBLIC,

    Appellant,

v.

ELIZABETH R. LOVERIDGE, Chapter 7
Trustee, EUROGAS, INC., and TEXAS
EURO GAS CORP.,

    Appellees.

BAP No. UT-16-033

Bankr. No. 04-28075
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Utah

_____

Brent D. Wride (Michael R. Johnson with him on the brief) of Ray Quinney & Nebeker
P.C., Salt Lake City, Utah, for Appellant.

Reid W. Lambert of Woodbury & Kesler, P.C., Salt Lake City, Utah, for Appellee
Elizabeth R. Loveridge, Chapter 7 Trustee.

Doyle S. Byers (Mona L. Burton with him on the brief) of Holland & Hart LLP, Salt
Lake City, Utah, for Appellee Eurogas, Inc.

_____

Before **MICHAEL**, **ROMERO**, and **HALL**, Bankruptcy Judges.

_____

**ROMERO**, Bankruptcy Judge.

_____

Appellant, the Slovak Republic, appeals the bankruptcy court's order approving a settlement agreement proposed by the Chapter 7 trustee, which provides for the bankruptcy estate's abandonment of litigation claims in exchange for consideration and waiver of claims. Because we find Appellant lacks standing, we dismiss this appeal.

## I. BACKGROUND

### a. The 2004 Bankruptcy

In June 2004, the Southern District of Texas bankruptcy court entered a judgment against Eurogas, Inc. (the "Debtor"), the Debtor's principals, and five other corporate entities in the amount of $113,733,315 plus interest. The judgment creditors, consisting of several bankrupt entities and their principals, were represented by a Chapter 7 trustee (the "Texas Trustee"). The Texas Trustee initiated the Debtor's involuntary Chapter 7 proceeding in the District of Utah bankruptcy court in May 2004. In November 2004, the Texas Trustee filed a proof of claim in the Debtor's bankruptcy case in the amount of $113,371,837 (the "$113 Million Judgment"). Texas Euro Gas Corp. ("Texas Euro Gas") purchased the $113 Million Judgment claim from the Texas Trustee in September 2007.[1]

Neither the Debtor nor its officers or representatives filed schedules or statements in the bankruptcy case, despite a court order to do so.[2] The appointed Chapter 7 trustee in the Debtor's case investigated assets, liquidated them, and distributed approximately

---

[1]    Despite the name, it does not appear that Texas Euro Gas is affiliated with the Debtor or EuroGas, Inc.

[2]    *In re Eurogas, Inc.*, 560 B.R. 574, 577 (Bankr. D. Utah 2016).

2

$700,000 to creditors, representing a .56 percent distribution on the claims in the case.[3]

Texas Euro Gas received the majority of that distribution on account of the $113 Million Judgment.[4] The bankruptcy court closed the case in March 2007. During the Debtor's bankruptcy case, the Debtor's officers, directors, and shareholders formed a second entity also named EuroGas, Inc. ("EuroGas"). EuroGas incorporated in November 2005 and asserts that it merged with the Debtor in July 2008, assuming all of the Debtor's assets and liabilities.[5]

**b. The 2015 Reopening**

In September 2015, Texas Euro Gas sent a letter to the United States Trustee for the District of Utah (the "U.S. Trustee"), urging the U.S. Trustee to reopen the bankruptcy case to investigate additional property of the estate, which Texas Euro Gas suggested had not been administered during the bankruptcy case. The assets related to the Debtor's interest in a foreign entity. As of the date of the involuntary petition, the Debtor was the sole stockholder of an Austrian company. The Austrian company owned a thirty-three percent interest in a Slovakian corporation, Rozmin, s.r.o. ("Rozmin").[6] Rozmin owned a twenty-four percent interest in mining rights to talc deposits in the Slovak

---

[3]     *Id.*

[4]     The remaining claims totaled approximately $1.3 million. *Exhibit A to Motion to Approve Agreement* at 2, *in* Appellant's App. at 21.

[5]     *Id.* at 3-4, *in* Appellant's App. at 22-23.

[6]     *Eurogas*, 560 B.R. at 578.

3

Republic (the "Talc Mining Rights").[7] The Slovak Republic revoked the Talc Mining Rights in December 2004.[8] This led to several lawsuits in the Slovak Republic over the Talc Mining Rights, which remain unresolved (the "Talc Mining Rights Claims"). Prior to Texas Euro Gas' letter to the U.S. Trustee, EuroGas initiated an arbitration proceeding before the International Centre for Settlement of Investment Disputes in Paris, France, seeking resolution of the Talc Mining Rights Claims (the "Arbitration").

The U.S. Trustee filed a motion to reopen the bankruptcy case, explaining the Chapter 7 trustee may not have administered the Talc Mining Rights Claims. The U.S. Trustee requested the bankruptcy court reopen the case to allow a trustee to investigate and potentially administer the Talc Mining Rights Claims.[9] The bankruptcy court reopened the bankruptcy case over EuroGas' objection. The U.S. Trustee selected Elizabeth Loveridge for appointment as the Chapter 7 trustee ("Trustee Loveridge") on December 21, 2015.

### c. Motion to Approve Settlement Agreement and Notice of Abandonment

---

[7]     *Objection to Motion to Reopen Under 11 U.S.C. §350, for an Order to Appoint Chapter 7 Trustee under Fed. R. Bankr. P. 5010 and Delay Payment of the Filing Fee Pursuant to L.B.R. 510(b)* at 4, *in* Appellee's App. at 4.

[8]     *Memorandum Decision* at 6, *in* Appellant's App. at 75. Rozmin immediately contested the revocation of the Talc Mining Rights, which led to three Slovakian Supreme Court decisions confirming the revocation violated the Slovak Republic's laws. Despite these rulings, the Slovak Republic refused to reinstate the Talc Mining Rights. *Exhibit A to Motion to Approve Agreement* at 3, *in* Appellant's App. at 22.

[9]     *Motion to Reopen Under 11 U.S.C. §350, for an Order to Appoint Chapter 7 Trustee under Fed. R. Bankr. P. 5010 and Delay Payment of the Filing Fee Pursuant to L.B.R. 510(b)*. Bankr. ECF No. 148.

After her appointment, Trustee Loveridge investigated ownership of the Talc Mining Rights Claims. Trustee Loveridge determined she "would be required to bring an adversary proceeding against EuroGas," to establish the estate's interest in the Talc Mining Rights Claims, "which would require substantial time and resources."[10] Accordingly, Trustee Loveridge negotiated a settlement agreement with EuroGas that provided for Trustee Loveridge's abandonment of the estate's interest in the Talc Mining Rights Claims in exchange for consideration (the "Agreement"). The pertinent portions of the Agreement provide that in exchange for consideration of $150,000 from EuroGas to the bankruptcy estate, Trustee Loveridge would file a notice of abandonment of any remaining interest in the Talc Mining Rights Claims (the "Abandonment"). Upon bankruptcy court approval of the Abandonment, EuroGas would make an additional payment of the lesser of (a) $100,000; or (b) the amount needed to pay administrative claims in full plus an additional $175,000 distribution to creditors. This effectively capped EuroGas' consideration at $250,000. As further incentive for the Abandonment, Texas Euro Gas agreed to withdraw its proof of claim for the $113 Million Judgment, eliminating the debt from the estate.

Trustee Loveridge filed the *Motion to Approve Agreement* and *Notice of Intent to Abandon Property of the Estate* (the "Settlement Pleadings") in August 2016.[11] The

---

[10]     *Exhibit A to Motion to Approve Agreement* at 4, *in* Appellant's App. at 23. Trustee Loveridge found the pervious Chapter 7 trustee "did not expressly abandon" the mining rights, "but may or may not have intended that the [mining rights] be abandoned upon closing of the Bankruptcy Case." *Id.*, *in* Appellant's App. at 23.

[11]     Appellant's App. at 8, 26.

Slovak Republic objected to the Settlement Pleadings, arguing the Agreement was effectively a sale under 11 U.S.C. § 363,[12] instead of a settlement or compromise and the Agreement was not made in good faith because it relied on the withdrawal of Texas Euro Gas' claim—among other arguments.[13] After Trustee Loveridge and EuroGas entered the Agreement, the Slovak Republic offered $250,000 to purchase the estate's interest in the Talc Mining Rights Claims by quitclaim deed.[14]

After conducting a three-day hearing, the bankruptcy court approved the Agreement, finding its terms, including withdrawal of Texas Euro Gas' claim, resulted in a fifteen to twenty percent distribution on the claims of unsecured creditors.[15] The bankruptcy court noted whether the Talc Mining Rights Claims were property of the bankruptcy estate or were previously abandoned was "of great interest to both [EuroGas] and the Slovak Republic."[16] The bankruptcy court also noted the Slovak Republic objected "not because it believe[d] it [would] be paid more as a creditor if the Agreement [was] rejected, but because it [stood] to benefit in the [Arbitration]" if the bankruptcy

---

[12]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[13]     *The Slovak Republic's Combined Objection to the Chapter 7 Trustee's (A) Motion to Approve Agreement, and (B) Notice of Intent to "Abandon" Property* (the "Objection to Compromise"), *in* Appellant's App. at 32.

[14]     *In re Eurogas, Inc.*, 560 B.R. 574, 581 (Bankr. D. Utah 2016).

[15]     *Id.* at 580.

[16]     *Id.* at 579.

6

court did not approve the Agreement and Abandonment.[17] The bankruptcy court considered the Slovak Republic's argument that the Agreement was effectively a § 363 sale, but determined there was no advantage to creditors to applying a § 363 analysis. The bankruptcy court found Trustee Loveridge "compromised several issues that would require protracted litigation" and that "[a]voiding litigation may be the subject of a compromise or settlement."[18]

Accordingly, the bankruptcy court reviewed the Agreement as a Federal Rule of Bankruptcy Procedure Rule 9019 settlement and applied the analysis set forth in *Kopexa*.[19] The bankruptcy court's analysis under the *Kopexa* factors weighed in favor of approving the Agreement. The bankruptcy court also authorized Trustee Loveridge to abandon any claim to the Talc Mining Rights Claims pursuant to § 554(a) as being burdensome and of inconsequential value to the estate. Specifically, the bankruptcy court found litigation to determine the bankruptcy estate's interest in the Talc Mining Rights Claims would be costly and the Talc Mining Rights Claims were of inconsequential value to any parties outside of the Arbitration.[20] The bankruptcy court also relied on Trustee

---

[17]     *Id.* at 581. The bankruptcy court was also "aware that the matters in [the] bankruptcy case [were] important to the Slovak Republic and [EuroGas] not on their own account, but because the parties hope[d] to gain an advantage in the [Arbitration]." *Id.* at 579.

[18]     *Id.* at 582 (citing *Rich Dad Operating Co., LLC v. Zubrod (In re Rich Glob., LLC)*, 652 F. App'x 625, 630 (10th Cir. 2016)).

[19]     *In re Kopexa Realty Venture Co.*, 213 B.R 1020 (10th Cir. BAP 1997). All future references to "Rule" or "Rules" refer to the Federal Rules of Bankruptcy Procedure.

[20]     *Eurogas*, 560 B.R. at 586.

Loveridge's business judgment for rejecting the Slovak Republic's offer to purchase the Talc Mining Rights Claims for $250,000 by quitclaim transfer.

Trustee Loveridge requested the bankruptcy court approve the abandonment *nunc pro tunc*, but the bankruptcy court did not specifically order *nunc pro tunc* relief because "[w]hen property is abandoned, it 'reverts to the debtor and stands as if no bankruptcy petition was filed.'"[21] The bankruptcy court concluded that the Agreement and Abandonment removed the dispute over title of the Talc Mining Rights Claims from the context of the bankruptcy case. Any further disputes as to the Talc Mining Rights Claims' title would be resolved in the Arbitration. Accordingly, the bankruptcy court entered the *Order Granting Trustee's Motion to Approve Agreement* and *Memorandum Decision* (collectively, the "Decision"), granting the Settlement Motion and approving the Abandonment. The Slovak Republic filed a timely notice of appeal of the Decision. EuroGas filed the *Motion to Dismiss Appeal* (the "Motion to Dismiss"),[22] alleging the Slovak Republic lacks standing to appeal, which we now consider.

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[23] The Slovak Republic appeals an

---

[21]    *Id*. (quoting *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm*, 502 U.S. 410 (1992)).

[22]    BAP ECF No. 16.

[23]    28 U.S.C. § 158(a)(1), (b)(1), & (c)(1); Rule 8005; 10th Cir. BAP L.R. 8005-1.

8

order approving a settlement agreement pursuant to Rule 9019, which is a final order of the bankruptcy court.[24] None of the parties elected to have this appeal heard by the United States District Court for the District of Utah.

While a determination as to the legal standard applied to an issue is typically reviewed *de novo*,[25] the Tenth Circuit recognizes that a bankruptcy court's decision "[w]hether to impose formal [§ 363] sale procedures is ultimately a matter of discretion that depends on the dynamics of the particular situation."[26] The bankruptcy court's approval of a settlement agreement brought pursuant to Rule 9019 is also reviewed for abuse of discretion.[27] A bankruptcy court's decision to authorize or disallow abandonment is reviewed for abuse of discretion.[28] Similarly, a bankruptcy court's

---

[24] *Loyd v. Foxglove, Inc. (In re S. Med. Arts Cos.)*, 343 B.R. 250, 254 (10th Cir. BAP 2006).

[25] *Hadden v Bowen*, 851 F.2d 1266, 1268 (10th Cir. 1988) ("The issue of whether the [trial] court relied on the correct legal standard . . . is a matter of law which we review *de novo*.").

[26] *Rich Dad Operating Co., LLC v. Zubrod (In re Rich Glob., LLC)*, 652 F. App'x 625, 630 (10th Cir. 2016) (quoting *Goodwin v. Mickey Thompson Enter. Grp., Inc.*, 292 B.R. 415, 422 (9th Cir. BAP 2003)).

[27] *S. Med. Arts Cos.*, 343 B.R. at 261 ("The approval of a compromise is within the sound discretion of the bankruptcy court and is reviewed for an abuse of discretion." (citing *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997))).

[28] *See In re Buerge*, Nos. KS-12-074, KS-12-077, KS-12-078, KS-13-022, KS-13-023, KS-13-024, KS-13-025, 2014 WL 1309694, at *19 (10th Cir. BAP Apr. 2, 2014) (finding bankruptcy court abused discretion in compelling abandonment under § 554(b)); *see also In re Schwarz Publ'g, Inc.*, 398 F. App'x 321, 321-22 (9th Cir. 2010); *In re Johnston*, 49 F.3d 538, 540 (9th Cir. 1995) (citing *In re K.C. Mach. & Tool, Co.*, 816 F.2d 238, 244 (6th Cir. 1987)).

decision whether to enter an order *nunc pro tunc* will not be disturbed absent abuse of discretion.[29]

## III. DISCUSSION

### a. The Slovak Republic's Standing to Appeal

In the Motion to Dismiss, EuroGas argues the Slovak Republic lacks standing to appeal the Decision. The Slovak Republic obtained standing as an unsecured creditor in the bankruptcy case by purchasing two unsecured claims.[30] In the Motion to Dismiss, EuroGas argues the Slovak Republic is not an aggrieved party because, as an unsecured creditor, the Slovak Republic stands to receive a greater return on its claim under the Agreement than it otherwise would. The Slovak Republic responds, arguing: (1) EuroGas waived its right to contest the Slovak Republic's standing by not objecting below; and (2) the Slovak Republic is an aggrieved party because the bankruptcy court's orders foreclosed a § 363 sale, which may have generated a greater distribution to creditors.

We begin with a review of standing. Constitutional standing is a threshold issue that may be raised at any time.[31] Constitutional standing requires an injury in fact; a

---

[29]  *In re Land*, 943 F.2d 1265, 1265 (10th Cir. 1991) (order denying *nunc pro tunc* relief reviewed for abuse of discretion); *Malloy v. Wallace (In re Wallace)*, 298 B.R. 435, 439 (10th Cir. BAP 2003) (order granting *nunc pro tunc* relief reviewed for abuse of discretion), *aff'd* 99 F. App'x 870 (10th Cir. 2004).

[30]  The Slovak Republic purchased claims three and four, each in the amount of $240,181 from the original claimant O & F Proinvest AG, a Swiss corporation, and filed a notice of transfer of claim for both on August 19, 2016.

[31]  *In re Blagg*, No. NO-01-006, 2001 WL 725993, at *5 (10th Cir. BAP June 28, 2001) (citing *Bd. of Cty. Comm'rs v. W.H.I., Inc.*, 992 F.2d 1061, 1063 (10th Cir. 1993)).

causal relationship between the injury in fact and the challenged conduct; and a likelihood that the injury will be redressed by the court's review.[32] Where existence of a case or controversy is not an issue, courts may impose "a judicially-created set of principles that, like constitutional standing, places 'limits on the class of persons who may invoke the courts' decisional and remedial powers,'" known as prudential standing.[33] Generally, the "'party invoking federal jurisdiction bears the burden of establishing' standing."[34]

"[A] party that has satisfied the requirements of constitutional standing may nonetheless be barred from invoking a federal court's jurisdiction."[35] Prudential standing necessitates meeting three conditions a party must overcome before invoking federal jurisdiction: (1) "a plaintiff must assert his own rights, rather than those belonging to third parties;" (2) "the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens;" and (3) "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."[36]

---

[32]    *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 493 (10th Cir. 1998).

[33]    *Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[34]    *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2342 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013)).

[35]    *Geringer*, 297 F.3d at 1112 (citing *Bennett v. Spear*, 520 U.S. 154, 163 (1997)).

[36]    *Id.* (internal quotations and citations omitted).

11

The Tenth Circuit Court of Appeals places prudential standing limitations on bankruptcy appeals, recognizing that, "although the Bankruptcy Code 'does not contain an explicit grant or limitation on appellate standing,' only a 'person aggrieved' by a bankruptcy court's order may appeal."[37] The "person aggrieved" standard "is more stringent . . . than the 'case or controversy' standing requirement . . . because it is designed to limit appellate standing 'in order to avoid endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.'"[38] A "person aggrieved" is a person "whose rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court."[39] "Accordingly, to qualify as a person aggrieved, [a party] would have to show that the bankruptcy court order at issue 'diminish[ed his] property, increase[ed his] burdens, or impair[ed his] rights.'"[40] "Appellants bear the burden to demonstrate standing."[41]

---

[37] *In re Petroleum Prod. Mgmt., Inc.*, 282 B.R. 9, 13-14 (10th Cir. BAP 2002) (quoting *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir. 1994)); *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989) (adopting the "person aggrieved" standard).

[38] *In re Kreutzer*, 249 F. App'x 727, 729 (10th Cir. 2007) (quoting *Am. Ready Mix. Inc.*, 14 F.3d at 1500) (internal citations omitted).

[39] *Am. Ready Mix, Inc.*, 14 F.3d at 1500 (quoting *Holmes*, 881 F.2d at 940.

[40] *Kreutzer*, 249 F. App'x at 729 (10th Cir. 2007) (quoting *Am. Ready Mix, Inc.*, 14 F.3d at 1500); *Am. Ready Mix, Inc.*, 14 F.3d at 1500 ("standard [ ] requires an appellant to show that he is a 'person aggrieved' by the challenged bankruptcy court order.").

[41] *In re Miner*, 229 B.R. 561, 565 (2d Cir. BAP 1999) (citing *Sch. Dist. of Lancaster v. Lake Asbestos of Quebec, Ltd.*, 921 F.2d 1330, 1332 (3d Cir. 1990)); *Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001) (citing numerous cases) (concluding the party asserting appellate jurisdiction bears the burden of proving standing).

The Slovak Republic correctly points out prudential standing differs from constitutional standing in that the former is not jurisdictional and may be waived.[42] However, Tenth Circuit authority provides the "'person aggrieved' test is meant to be a limitation on *appellate standing*."[43] Furthermore, the Rules required Trustee Loveridge to provide all creditors with notice and opportunity to object to the Settlement Pleadings.[44] Accordingly, EuroGas had no basis to object to the Slovak Republic's standing under the person aggrieved standard prior to the appeal. Therefore, EuroGas has not waived the standing issue.

The Slovak Republic contends it is a person aggrieved based on its status as an unsecured creditor of the bankruptcy estate. The Slovak Republic argues had the bankruptcy court required a § 363 sale of the Talc Mining Rights Claims, the estate would have realized more for distribution to unsecured creditors. The Slovak Republic also argues issues in the Arbitration diminish its property, increase its burdens, or

---

[42] *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1154 (10th Cir. 2013) ("Prudential standing doctrines are not jurisdictional: they may be forfeited or waived.") (citing *Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007)); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (quoting *Wilderness Soc. v. Kane Cty*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011)).

[43] *In re Am. Ready Mix, Inc.*, 14 F.2d 1497, 1500 (10th Cir. 1994) (emphasis added).

[44] Fed. R. Bankr. P. 2002(a)(3) requires all creditors receive twenty-one days notice of a hearing on approval of a compromise or settlement. Even if, as the Slovak Republic argues, the Agreement should have been reviewed as a sale under § 363, all creditors must receive twenty-one days notice. Fed. R. Bankr. P. 2002(a)(2).

13

otherwise impair its rights. However, the Slovak Republic abandoned this contention at oral argument.[45]

EuroGas counters, asserting while being an unsecured creditor gave the Slovak Republic standing to participate in the hearing on the Settlement Pleadings, it is not a person aggrieved for purposes of appellate standing because it benefited from the Decision. EuroGas argues but for the Agreement, there is virtually no payout on the Slovak Republic's unsecured claims because the $113 Million Judgment receives the majority of the distribution to the class. However, under the Agreement, the distribution to unsecured creditors significantly increases upon withdrawal of the $113 Million Judgment. Accordingly, the Slovak Republic is not harmed by the Agreement and has no standing as a person aggrieved. Even had the bankruptcy court required a sale of the Talc Mining Rights Claims, EuroGas urges, a sale to a third party would not have included the withdrawal of the $113 Million Judgment, leaving the Slovak Republic with virtually no recovery on its unsecured claims.

Although the Slovak Republic argues its objection to the claim for the $113 Million Judgment would result in the same increased distribution to unsecured creditors, this argument depends on a number of unknown outcomes. As this Court recognizes, where there are "multiple layers of intertwined contingencies that must occur in order for [an appellant] to arguably claim any pecuniary benefit from the appeal," the party's

---

[45] When questioned by the panel at oral argument as to the basis for standing, the Slovak Republic relied solely on its status as an unsecured creditor.

"interest in the appeal [is] too remote and indirect to confer standing."[46] The Slovak Republic's argument is contingent upon the bankruptcy court sustaining the objection to the $113 Million Judgment claim, which may or may not occur.

Accordingly, we agree the Slovak Republic lacks standing to appeal the Decision. As an unsecured creditor, the Slovak Republic offers no explanation to suggest how the Decision diminishes its property, increases its burdens, or impairs its rights. Because the Agreement results in a significant increase in the distribution to unsecured creditors, the only logical reason the Slovak Republic could have to appeal the Decision is to better its position in the Arbitration.[47] Such reasons are insufficient to confer standing to appeal the Decision and the Slovak Republic has not met its burden of establishing appellate jurisdiction.[48]

### b. The Merits of the Appeal

Even if this Court determined the Slovak Republic had standing and considered the merits of the appeal, we cannot hold that the bankruptcy court abused its discretion in

---

[46] *In re Paige*, No. UT-08-062, 2010 WL 3699747, at *11 (10th Cir. BAP Sept. 15, 2010) (stating that financial stake would be had if party sought to overturn a judgment and confirm a more favorable plan of reorganization was too remote to support standing).

[47] We note, on August 18, 2017, the Slovak Republic filed a copy of the *Award*, indicating the adjudicating body dismissed the Arbitration. BAP ECF No. 69.

[48] *See In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325-26 (11th Cir. 2014) ("[A] party is not aggrieved, for the purposes of appealing from a bankruptcy court order, when the only interest allegedly harmed by that order is the interest in avoiding liability from an adversary proceeding."); *In re LTV Steel Co.*, 560 F.3d 449, 453 (6th Cir. 2009) (citing numerous cases) ("we are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal.").

15

approving the Agreement and authorizing the Abandonment. First, the bankruptcy court considered whether the Agreement should be analyzed as a § 363 sale and determined, using its discretion, it would not benefit creditors to do so. Furthermore, the bankruptcy court stated, "[a] sale presupposes a property right that can be sold. If the Trustee were to undertake to sell the [Talc Mining Rights Claims], she would need to ascertain whether the bankruptcy estate owns" those claims.[49] "As [Trustee Loveridge] stated . . . she was unable to determine whether or not the [Talc Mining Rights Claims] remained with the bankruptcy estate . . . ."[50] As determining the ownership of the Talc Mining Rights Claims "indicate[d] that formal sale procedures under § 363 would be a lengthy and litigious process, . . . [i]t does not appear that there is any advantage to be gained for creditors by applying . . . § 363 in lieu of treating [the] transaction under Rule 9019."[51]

Furthermore, the bankruptcy court properly applied the factors set forth in *Kopexa*,[52] in determining the Agreement was fair and reasonable. *Kopexa* requires "(1) the chance of success on the litigation on the merits; (2) possible problems in collecting

---

[49]     *In re Eurogas, Inc.*, 560 B.R. 574, 582 (Bankr. D. Utah 2016).

[50]     *Id.*

[51]     *Id.* ("[T]o the extent the Agreement is not a classic settlement, it is still within the purview of Rule 9019 as a compromise. The Trustee has compromised several issues that would require protracted litigation. Avoiding litigation may be the subject of a compromise or settlement.") (citing *Rich Dad Operating Co., LLC v. Zubrod (In re Rich Glob., LLC)*, 652 F. App'x 625, 629-30 (10th Cir. 2016)).

[52]     *In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (10th Cir. BAP 1997).

the judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors."[53]

The bankruptcy court found the probability of success of litigation, the complexity and expense of litigation, and the interest of creditors all weighed in favor of approving the Agreement. The bankruptcy court considered the difficulty of collection a negligible factor because should the bankruptcy estate be determined the owner of the Talc Mining Rights Claims, Trustee Loveridge would likely liquidate the claims instead of enforcing a judgment. However, because no factor weighed against approving the Agreement and Trustee Loveridge "adequately explained the business reasons for entering into [the] Agreement," the bankruptcy court approved the Agreement.[54]

Finally, in considering the Abandonment, the bankruptcy court correctly found pursuing litigation to determine ownership of the Talc Mining Claims would place a burden on an estate with no assets to fund such litigation. Additionally, the bankruptcy court did not err in finding the Talc Mining Rights Claims were

> very valuable to the parties in the Arbitration [], but because they are not liquid claims, or easily administered, the [Talc Mining Rights Claims] are of inconsequential value to the bankruptcy estate outside of an arrangement with one of those two parties. The Trustee is trying to maximize the value to the estate with the Agreement with [EuroGas].[55]

---

[53] *Loyd v. Foxglove, Inc. (In re S. Med. Arts Cos.)*, 343 B.R. 250, 256 (10th Cir. BAP 2006) (citing *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997)).

[54] *In re Eurogas*, 560 B.R. 574, 585 (Bankr. D. Utah 2016).

[55] *Id.*

Accordingly, the bankruptcy court appropriately considered and relied on Trustee Loveridge's business judgment in authorizing the Abandonment. As such, the bankruptcy court did not abuse its discretion.[56]

## IV. CONCLUSION

The Slovak Republic appeals an order that creates no demonstrable harm to its status, but only increases dividends paid to unsecured creditors. Because the Slovak Republic does not establish it is a "person aggrieved," other than by implicating the Arbitration, we must dismiss this appeal for appellant's lack of standing. Accordingly, it is hereby ordered that this appeal is DISMISSED.

---

[56] Finding no Tenth Circuit authority, the Court notes other circuits and bankruptcy courts recognize when determining whether an asset is burdensome or of inconsequential value, the bankruptcy court must "find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003), *aff'd*, 112 F. App'x 868 (3d Cir. 2004); Collier on Bankruptcy, 15th ed., rev. ¶ 554.02[4].